In the Matter of SLEEPY HOLLOW LAKE, INC., et al., Petitioners, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, February 21, 1974.

*Ainsworth, Sullivan, Tracy & Knauf* (*Kent H. Brown* and *George H. Kenny* of counsel), for petitioners.

*Peter H. Schiff* (*Charles R. Gibson* and *Howard J. Read* of counsel), for respondent.

STALEY, JR., J. P. This is a proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Service Commission requiring that extensions of electric and telephone distribution lines to most

new residential subdivisions of five dwelling units or more be placed underground and prescribing rules and regulations to govern such extensions. (16 NYCRR Parts 100 and 604.)

The Public Service Commission proceedings under review were instituted, by orders dated November 12, 1969, to consider the adoption and promulgation of rules and regulations pertaining to the undergrounding of electric and telephone facilities in areas not previously serviced. Twelve days of public hearings were conducted with testimony from witnesses for the utilities, the commission staff, representatives of other State agencies, officials of local governments, building and electrical contractors, and other concerned citizens.

The hearing examiner issued a recommended decision on June 22, 1971 proposing that mandatory undergrounding rules be adopted, and, on December 28, 1971, the full commission adopted rules and regulations (16 NYCRR Parts 100 and 604) requiring that on and after June 28, 1972 the underground installation of electric and telephone distribution facilities in most new residential subdivisions of five dwelling units or more would be mandatory, with the cost of the first 60 feet per customer to be borne by the utility, and with provision for exemption, upon review, in individual cases.

After the rules were adopted, a number of requests for exemption and clarification were received. During 1972, the commission issued three separate opinions of general applicability interpreting the rules. Among the applications for exemption received was that of petitioner Sleepy Hollow Lake, Inc. which application was denied, the commission reaffirming its position that its mandatory undergrounding rules applied to both home builders and land developers alike.

Petitioners contend that the rules, as amended, which require them to install and to contribute the total cost of undergrounding the electric lines, subject to a possible refund of the cost of the first 60 feet per dwelling unit (without interest), if and when said dwelling units are built and connected to service within 10 years from the date on which service is first made available, were illegal and not within the power of the Public Service Commission's authority to act.

The principal issues raised are (1) whether the Public Service Commission possessed the power to order mandatory undergrounding; (2) if it had such power, whether the statute conferring such authority was constitutional; (3) whether the commission's decision was supported by substantial evidence; and (4) whether the determination, as applied to land developers,

was void as being "arbitrary, unreasonable, discriminatory and unlawful".

Petitioners' main contention is that the commission does not have the authority to mandate undergrounding of electric and telephone lines solely for aesthetic or environmental reasons and, since that is the basis for its determination, such determination and rules and regulations promulgated thereunder are illegal.

The commission, in its opinion and order of December 28, 1971, stated: "The growing awareness of the need to preserve the scenic amenities of our environment, as well as recent technological advances, have resulted in a pronounced trend toward undergrounding of utility distribution lines. Undoubtedly this trend will continue. This is especially true in new residential subdivisions where the undergrounding of distribution lines involves little, if any, replacement of existing facilities or the extensive construction necessitated in developed areas and where, accordingly, the cost of undergrounding can be held to a minimum.

"Considering that new subdivisions may last for several generations, and that overhead distribution lines constructed now may persist to offend countless persons into the future (or be replaced only at a cost far in excess of the cost of initial undergrounding), the case for compulsory undergrounding of distribution lines in new subdivisions is extremely strong. The case is further strengthened by the fact that the cost of undergrounding such distribution lines is declining and may, through more intensive efforts in the field, approach the cost of initial overhead lines in the near future."

Although the commission denies that the aesthetic advantage of underground as opposed to overhead wiring was the sole basis for the challenged determination, it, nevertheless, appears that the commission did have the authority to order mandatory undergrounding on that basis alone.

Subdivision 1 of section 65 of the Public Service Law authorizes the commission to: "furnish and provide such service, instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable."

Subdivision 2 of section 66 of the Public Service Law further provides that the commission has the power to: "examine or investigate the methods employed by such persons, corporations and municipalities in manufacturing, distributing and supplying gas or electricity for light, heat or power and in transmitting the same, and have power to order such reasonable improve-

ments as will best promote the public interest, preserve the public health and protect those using such gas or electricity and those employed in the manufacture and distribution thereof, and have power to order reasonable improvements and extensions of the works, wires, poles, lines, conduits, ducts and other reasonable devices, apparatus and property of gas corporations, electric corporations and municipalities ''.

Chapter 155 of the Laws of 1970 amended subdivision 2 of section 5 of the Public Service Law to specifically empower the commission to: '' encourage all persons and corporations subject to its jurisdiction to formulate and carry out long-range programs, individually or cooperatively, for the performance of their public service responsibilities with economy, efficiency, and care for the public safety, the preservation of environmental values and the conservation of natural resources.''

Pursuant to these statutory directions, the Public Service Commission is authorized generally to prescribe the terms and conditions under which utilities shall extend their lines, the manner in which costs shall be borne, and the appropriate charges for such service.

Petitioners further contend that, even assuming that the commissioner had the statutory authority to order the undergrounding of utility distribution lines, the Legislature has provided inadequate standards to guide the exercise of such power, and the legislation is, therefore, unconstitutional. The Legislature has clearly marked out the general policies and objectives to be pursued by the commission in the exercise of the broad powers granted to it, and has restricted the direction to the extent that the commission's actions in pursuance of the statutory objectives be reasonable and in the public interest, leaving to the commission the latitude to decide each case in the light of all relevant circumstances.

The commission's determination was made pursuant to this broad delegation of power. In order to prevent an unlawful delegation of power, it is incumbent upon the legislative authority to set forth standards to indicate to an administrative agency the limits of its power, the specificity of the standards being relative to the nature of this program. (*Lichter* v. *United States,* 334 U. S. 742, 785; *Matter of City of Utica* v. *Water Pollution Control Bd.,* 5 N Y 2d 164, 169.) It has been held that the term '' public interest '' as contained in the Public Service Law is '' directly related and limited to the general purposes of [the] law '' and, as such, provides an adequate standard. (*Matter of International Ry. Co.* v. *Public Serv.*

*Comm. of State of N. Y.*, 264 App. Div. 506, 510, affd. 289 N. Y. 830.)

In *Matter of International Ry. Co.* v. *Public Serv. Comm. of State of N. Y.* (*supra,* p. 511), the court stated: " The primary standard of such interest as fixed by the Legislature to guide the Commisson, was not only permissible but inevitable from either a practical or a legal viewpoint. \* \* \* Instances throughout the Public Service Law where the Commission is empowered to apply the standard of ' public interest ' might be multiplied, and the term has been repeatedly referred to without criticism or the suggestion that it represented an unlawful delegation of power. \* \* \* Indeed it may be said that if the Commission were deprived of the power to make decisions on the basis of ' public interest ', with reference to the several sections of the Public Service Law where that term appears, only the shadow of regulation would be left."

The commission's undergrounding requirement was designed to effect an improvement in the quality of service rendered to the consuming public and, thus, in furtherance of the " public interest ". The determination thus effectuates the legislative direction that the utilities provide adequate service and facilities which are in all respects just and reasonable, and further complies with the direction of subdivision 2 of section 5 of the Public Service Law that the commission encourage long-range programs by the utilities " for the performance of their public service responsibilities with economy, efficiency, and care for the public safety, the preservation of environmental values and the conservation of natural resources."

The Public Service Law provides adequate standards to guide the commission in the exercise of its powers, and such powers were properly delegated to the commission. Such standards have been previously judicially determined to suffice. (*Matter of Sullivan County Harness Racing Assn.* v. *Glasser,* 30 N Y 2d 269; *Matter of City of Utica* v. *Water Pollution Control Bd., supra; Matter of International Ry. Co.* v. *Public Serv. Comm. of State of N. Y., supra.*)

Petitioners also argue that the commission's determination, rules and regulations are not supported by substantial evidence and are arbitrary and unreasonably discriminating when applied to land developers. The commission considered at its hearings, not merely the question of whether undergrounding was aesthetically preferable, but also whether the additional costs involved in undergrounding were reasonable.

On the issue of preservation of environmental values, there was substantial evidence on which the commission could base a conclusion that the undergrounding of distribution lines was aesthetically preferable to their being strung through the air, the record containing various expressions of opinion on the subject, in addition to the fact that undergrounding is mandated by the FHA and the VA wherever economically feasible and is encouraged by the Public Service Commissions of the States of California, Maryland, Arkansas and Michigan. Aesthetic considerations have already been judicially recognized as sufficient to support zoning regulations. (*Matter of Cromwell* v. *Ferrier,* 19 N Y 2d 263; *People* v. *Stover,* 12 N Y 2d 462, app. dsmd. 375 U. S. 42.) It further appears that there was substantial evidence before the commission on which it could base a decision that the costs of undergrounding, as apportioned by it, were not unduly burdensome and met the test of reasonableness.

Petitioners' final claim is to the effect that the rules and regulations impose inequality of treatment as between builders and developers. They provide that builders may be required by the utilities to deposit the difference between the estimated overhead and underground costs of the first 60 feet, and that said deposit is refundable, with interest, as each new customer is connected to service within five years from the date on which service is first made available. With respect to developers, however, the regulations require that they pay the entire cost, including that of the first 60 feet, at the outset, with the cost of the first 60 feet per house being refunded, without interest, if the house is built and connected to service within a 10-year period.

Such regulations are not arbitrarily discriminatory since there is a rational basis for the distinction, because in the case of a home builder it might reasonably be expected that the houses will be sold and connected up to service within a relatively short period of time. There is no such guarantee attendant the sale of vacant lots where the building of houses and their connection to service are all rather speculative, and during this entire period of time, these lines are nonrevenue producing to the utility.

The determination, rules and regulations of the commissioner are based on valid constitutional legislative enactments, and are both supported by substantial evidence and are neither arbitrary nor without rational basis.

The determination should be confirmed, with costs, and the petition dismissed.

GREENBLOTT, COOKE, SWEENEY and KANE, JJ., concur.

Determination confirmed, with costs, and petition dismissed.