Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake (2020 NY Slip Op 04212)





Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake


2020 NY Slip Op 04212


Decided on July 23, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 23, 2020

528769

[*1]In the Matter of Troy Sand & Gravel Co., Inc., et al., Appellants,
v
Town of Sand Lake et al., Respondents. (Proceeding No. 1.)

Calendar Date: May 22, 2020

Before: Garry, P.J., Lynch, Clark, Devine and Reynolds Fitzgerald, JJ.


Gilchrist Tingley, PC, Troy (Andrew W. Gilchrist of counsel), for Troy Sand & Gravel Co., Inc. and another, appellants.
Mandel Clemente, PC, East Greenbush (Linda A. Mandel Clemente of counsel), for William H. Hoffay and others, appellants.
Couch White, LLP, Albany (Adam J. Schultz of counsel), for Rifenburg Construction, Inc., appellant.
DuCharme Clark, LLP, Clifton Park (John B. DuCharme of counsel), for respondents.



Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (McNally Jr., J.), entered February 19, 2019 in Rensselaer County, which dismissed petitioners' applications, in three combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, to review a determination of respondent
Town Board of the Town of Sand Lake enacting Local Law No. 4 (2017) of the Town of Sand Lake.
In May 2017, respondent Town Board of the Town of Sand Lake adopted Local Law No. 4 (2017) of the Town of Sand Lake (hereinafter Local Law No. 4), which includes a new zoning map and revised zoning districts and allows mining on properties with existing permits. Prior to adopting the law, the Town Board held a public hearing. Public comment on the proposed zoning law was received prior to, during and after said hearing. Following the public hearing, the Town Board prepared an environmental assessment form (hereinafter EAF) and made it available for public inspection. Thereafter, the Town Board adopted a negative declaration pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA])[FN1] and adopted Local Law No. 4.
Petitioner Troy Sand & Gravel Co., Inc. owns and operates, among other things, a mining operation situated on approximately 195 acres within the Town of Sand Lake, Rensselaer County. Petitioner Bonded Concrete, Inc. owns and operates an existing commercial enterprise within the Town. Petitioners William H. Hoffay, Daniel H. Holser, Gregg Gardner and Richard Hastings are lifelong residents and taxpayers of the Town. Hoffay is also the owner and operator of petitioners Hoffay Farms, LLC and Hoffay's Harvest House, LLC, real property taxpayers in the Town. Petitioner Antfil S. Realty, LLC is a real property taxpayer in the Town. Petitioner Rifenburg Construction, Inc. holds a state mining permit and leases approximately 150 acres of property located within the Town from which it operates a mine pit.
In September 2017, Troy Sand and Bonded Concrete commenced the first combined proceeding pursuant to CPLR article 78 and an action for declaratory judgment to annul the Town Board's enactment of Local Law No. 4. Troy Sand and Bonded Concrete alleged that Local Law No. 4 is internally inconsistent, was adopted in violation of law and fails to satisfy the test set forth in Berenson v Town of New Castle (38 NY2d 102, 107 [1975]). Hoffay, Holser, Gardner, Hastings, Hoffay Farm, Harvest House and Antfil (hereinafter collectively referred to as the taxpayer petitioners) and Rifenburg commenced the second and third combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, respectively, similarly seeking to annul Local Law No. 4, claiming that it was enacted in violation of SEQRA, as well as various state and local laws. The taxpayer petitioners and Rifenburg further alleged that Local Law No. 4 is preempted as a matter of law by the Mined Land Reclamation Law (see ECL 23-2701 et seq. [hereinafter MLRL]).
Respondents answered, opposing all relief requested and sought dismissal of the petitions/complaints. Following a combined oral argument on all three proceedings, Supreme Court dismissed the petitions/complaints. The court determined that Holser and Hastings lacked standing to challenge the Town Board's SEQRA compliance and that, in adopting Local Law No. 4, the Town Board fully complied with SEQRA. The court further found no merit to petitioners' contentions that the Town Board's actions were arbitrary, capricious or otherwise unlawful. Petitioners appeal.
Initially, we find, contrary to Supreme Court's ruling, that Holser and Hastings have standing to challenge the Town Board's SEQRA review process. For purposes of standing, when a property owner challenges the SEQRA review process undertaken in conjunction with a zoning enactment to which its property is subject, "ownership of the subject property confers a legally cognizable interest in being assured that the Town satisfied SEQRA before taking action to rezone its land" (Matter of Wir Assoc., LLC v Town of Mamakating, 157 AD3d 1040, 1044 [2018] [internal quotation marks, brackets and citation omitted]; see Matter of Mombaccus Excavating, Inc. v Town of Rochester, N.Y., 89 AD3d 1209, 1210 [2011], lv denied 18 NY3d 808 [2012]). "[S]tanding should be liberally constructed so that land use disputes are settled on their own merits rather than by preclusive, restrictive standing rules. To that end, the allegations contained in a petition are deemed to be true and are construed in the light most favorable to the petitioner" (Matter of Town of Coeymans v City of Albany, 284 AD2d 830, 833 [2001] [internal quotation marks and citation omitted], lv denied 97 NY2d 602 [2001]). Holser and Hastings have demonstrated that they reside in the Town and own property therein. It is not necessary to assert "proof of special damage or in-fact injury" (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413 [1987]), nor do they have to state a noneconomic environmental harm. All that is necessary for standing is to demonstrate ownership of property subject to the rezoning ordinance (see Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 687 [1996]; Matter of Wir Assoc., LLC v Town of Mamakating, 157 AD3d at 1044).
Turning to the substantive arguments, the taxpayer petitioners assert that Local Law No. 4 must be declared null and void because it was adopted in the absence of a valid comprehensive plan, as the plan used by the Town Board was outdated and effectively invalid. They also contend that Local Law No. 4 lessens diversity of housing options, eliminates affordable housing options, and imposes substantial burdens on existing farms. Petitioners in all three proceedings argue that the zoning map attendant to the text of Local Law No. 4 is unclear and confusing, and that Local Law No. 4 must be annulled as it is inconsistent and incomprehensible.
"A municipality is free to alter its zoning regulations, but must do so in a manner that comports with its comprehensive plan" (Matter of Wir Assoc., LLC v Town of Mamakating, 157 AD3d at 1042-1043 [citations omitted]; see Udell v Haas, 21 NY2d 463, 469-470 [1968]; Greenport Group, LLC v Town Bd. of the Town of Southold, 167 AD3d 575, 579 [2018], lv denied 33 NY3d 910 [2019]). "A town's zoning determination is entitled to a strong presumption of validity; therefore, one who challenges such a determination bears a heavy burden of demonstrating, beyond a reasonable doubt, that the determination was arbitrary and unreasonable or otherwise unlawful" (Matter of Birchwood Neighborhood Assn. v Planning Bd. of the Town of Colonie, 112 AD3d 1184, 1185 [2013] [internal quotation marks and citations omitted]). "Even if the validity of a provision is fairly debatable, [a municipality's] judgment as to its necessity must control" (Matter of Bonacker Prop., LLC v Village of E. Hampton Bd. of Trustees, 168 AD3d 928, 930 [2019] [internal quotation marks, brackets and citations omitted], lv denied 33 NY3d 904 [2019]). "Thus, when a [petitioner] fails to establish a clear conflict with the comprehensive plan, the zoning classification must be upheld" (Matter of Youngewirth v Town of Ramapo Town Bd., 155 AD3d 755, 759 [2017] [internal quotation marks and citations omitted]). "All that is required is that the court be able to satisfy itself, based upon a review of all available evidence, that such plan in fact exists and that the municipality is acting in the public interest in furtherance thereof" (Matter of Skenesborough Stone v Village of Whitehall, 254 AD2d 664, 666 [1998] [emphasis added and citations omitted], appeal dismissed 95 NY2d 902 [2000]).
The Town Board adopted the present Comprehensive Plan in 2006 (hereinafter the plan). In the process of so doing, the Town prepared a generic environmental impact statement (hereinafter GEIS). The plan recommended periodic review and, to that end, the Town appointed a committee that was charged with regularly reviewing the plan. In 2015, the Town sought to formally update the plan and, in June 2015, sought a grant from the state to allow it to do so. However, as of September 2015, the committee determined that the vision statement and objectives of the plan "remained relevant." The plan was never revoked or determined obsolete by the Town and remained in place throughout the enactment of Local Law No. 4.
The record further evinces that Local Law No. 4 comports with the plan. The plan's "vision and goals" include "[p]romot[ing] and encourag[ing] growth in a variety of land uses that protect[] the rural and historic base of the community while increasing the tax base" and "[p]rotect[ing] natural resources, (including lakes, streams, forested areas, and wetland), scenic beauty, and historic character through preservation, conservation, and appropriate siting of development." The record establishes that the plan addresses the Town's intent to provide a variety of housing types to accommodate various income levels and recommends the creation of incentives for affordable housing through land use regulations, revising the zoning ordinance to allow for accessory apartments and identifying underutilized lands for potential affordable housing, while encouraging the retention of farmland and low density residential uses. Local Law No. 4 does not conflict with the plan insofar as the zoning regulations concerning housing development and agricultural endeavors reflect the vision and goals that the Town Board outlined and consistently reviewed in the plan.
Next, we agree with Supreme Court that the Town Board complied with the procedural and substantive requirements of SEQRA in adopting Local Law No. 4. "Judicial review of an agency determination under SEQRA is limited to whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d 1165, 1166 [2018] [internal quotation marks and citations omitted]; see Matter of Brunner v Town of Schodack Planning Bd., 178 AD3d 1181, 1183 [2019]). In conducting its review, this Court "may not substitute its judgment for that of the lead agency, and may annul its decision only if it is arbitrary, capricious or unsupported by the evidence" (Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d 1220, 1223 [2018] [internal quotation marks, brackets and citations omitted]; see Matter of Brunner v Town of Schodack Planning Bd., 178 AD3d at 1183).
Initially, we find that the Town Board properly named itself as lead agency for purposes of the SEQRA review and classified the action as type 1. The Town Board was then required to take a "hard look" at areas of environmental concern before declaring whether an environmental impact statement was necessary. While type 1 actions, such as amendments of zoning ordinances, are presumed likely to have a significant adverse impact on the environment and may require an environmental impact statement (6 NYCRR 617.4 [a] [1]), the preparation of such a statement is not a per se requirement for type 1 actions (see Matter of Gabrielli v Town of New Paltz, 93 AD3d 923, 924 [2012], lv denied 19 NY3d 805 [2012]; Matter of Mombaccus Excavating, Inc. v Town of Rochester N.Y., 89 AD3d at 1211; Matter of Citizens for Responsible Zoning v Common Council of City of Albany, 56 AD3d 1060, 1061 [2008]). Here, in taking a "hard look," the Town Board relied on many things, including the GEIS that was prepared in 2006.
Petitioners argue that the 2006 GEIS was and is outdated and any reliance thereon by the Town Board invalidates its "hard look." Where a final GEIS has been prepared in connection with the adoption of a comprehensive plan, "[n]o further SEQRA compliance is required if a subsequent proposed action will be carried out in conformance with the conditions and thresholds established for such actions in the [GEIS] or its findings statement" (6 NYCRR 617.10 [d] [1]; see Matter of Calverton Manor, LLC v Town of Riverhead, 160 AD3d 838, 840-841 [2018], lv dismissed 35 NY3d 946 [2020]). However, a supplemental environmental impact statement "must be prepared in connection with a 'subsequent proposed action' that was 'not addressed or was not adequately addressed' in the GEIS" (Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d 306, 319 [2006], quoting 6 NYCRR 617.10 [d] [4]). "The use of a [GEIS] is especially appropriate when a municipality changes its land use plans, development plans or zoning regulations" (Matter of Danyla v Town Bd. of Town of Florida, 259 AD2d 850, 852 [1999] [internal quotation marks and citations omitted]). Under SEQRA, "[a] determination should be annulled only if it is arbitrary, capricious or unsupported by the evidence" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d 1165, 1166 [2018] [internal quotation marks and citation omitted]).
The Town Board accepted a draft and final GEIS in connection with its adoption of the plan. The GEIS indicates that "actions that may require no further review include regulatory actions such as zoning . . . given that they are carried out in conformance with the conditions set forth in the plan." The plan sets forth conditions and thresholds for future actions concerning the update of the Town's zoning ordinance with particular regard to minimizing the environmental impact of future development and utilizing regulatory tools to encourage a mix of commercial types while minimizing land use conflicts. It was not arbitrary or capricious for the Town Board to look to the existing GEIS and forgo the preparation of a supplemental environmental impact statement since Local Law No. 4 — an update to the zoning ordinance — implemented relevant portions of the plan, thus satisfying the conditions and thresholds for future actions set forth in the GEIS (see Matter of Calverton Manor, LLC v Town of Riverhead, 160 AD3d at 840-841).
Perhaps most importantly, the Town Board did not rely solely on the GEIS in its "hard look" assessment. Rather, the record further evinces that the Town Board completed a full and extensive EAF and therein indicated that no significant environmental impacts would result from the adoption of Local Law No. 4. Specifically, the Town Board reasoned that the enactment of Local Law No. 4 would have no significant impact on air quality, water quality, traffic, noise, solid waste or increased flooding/draining because the updates and amendments do not significantly change or establish new zones or permit new land uses that would create any such impact. The Town Board determined that Local Law No. 4 focuses more intently on development in the Town hamlets and in locations where commercial land uses, such as mining, have been established historically. The Town Board indicated that Local Law No. 4 reflects the community's increased support for agriculture by permitting it throughout the Town, but does not include substantial changes in land use or the intensity of land use related to agriculture. Moreover, it determined that the Town contains no critical environmental areas.
Finally, the EAF indicates that "[a]ll projects requiring site plan review by the Town's Planning Board (which includes all projects and uses except single and two-family homes and traditional agriculture), will be considered for environmental impact." In this regard, Local Law No. 4 was designed to consider erosion control, stormwater management, traffic circulation and other impacts. Following the Town Board's review of the EAF, it was made available for public inspection. Thereafter, the Town Board determined that Local Law No. 4 would have no significant adverse impact on the environment and issued a negative declaration. The record reveals that the Town Board conducted a thorough environmental assessment, held a public hearing, invited and received public comment, created an extensive record and adopted findings based on the record, identified relevant areas of environmental concern, and made a reasonable and detailed elaboration of the basis for its determination, thus satisfying its obligations under SEQRA (see Matter of Brunner v Town of Schodack Planning Bd., 178 AD3d at 1184; 6 NYCRR 617.7 [b]).
With regard to SEQRA, paragraph (C) of § 250-99 of Local Law No. 4 mandates that all applications to create a Natural Resource Extraction Planned Development District will be classified as type 1 and will require an environmental impact statement. SEQRA provides clear, if extensive, procedures for compliance thereto, and strict compliance is mandatory (see Matter of King v Saratoga County Bd. of Supervisors, 89 NY2d 341, 347 [1996]). As relevant here, SEQRA procedures call for the naming of a lead agency and then for said agency to classify the action, and ultimately issue either a positive declaration (requiring an environmental impact statement) or a negative declaration (requiring no environmental impact statement). Because we find that this section of Local Law No. 4 usurps powers reserved under SEQRA, it is facially flawed and, as such must be annulled.
Further, paragraph (G) of § 250-99 of Local Law No. 4 prohibits the ingress, egress, and transport of minerals on Town roads. The authority of a town to regulate the use of its roads and streets is delegated to it by way of Vehicle and Traffic Law § 1600. Although Vehicle and Traffic Law § 1660 (a) (10) specifically allows towns to establish a truck route based on weight and to exclude vehicles subject to those weight categories from traveling on highways except those routes, it also provides that "[s]uch exclusion shall not be construed to prevent the delivery or pick up of merchandise or other property." Vehicle and Traffic Law § 1660 (a) (28) also allows towns to exclude trucks based on size or weight from use of certain town roads, but also includes the exception for deliveries and pick-ups. As § 250-99 (G) of Local Law No. 4 is devoid of any such carve out, said section must also be annulled.
Next, the taxpayer petitioners and Rifenburg contend that Local Law No. 4 contravenes the MLRL by establishing a 200-foot setback requirement. Rifenburg further contends that the reclamation bond requirement of Local Law No. 4 is preempted by the MLRL. Supreme Court found that the MLRL did not preempt Local Law No. 4. We agree. As relevant here, "[t]he [MLRL] explicitly states that it 'shall supersede all other state and local laws relating to the extractive mining industry' but does not prevent any local government from 'enacting or enforcing local zoning ordinances or laws which determine permissible uses in zoning districts'" (Town of Riverhead v T.S. Haulers, 275 AD2d 774, 775 [2000], quoting ECL 23-2703 [2] and [2] [b]; see Matter of Frontier Stone, LLC v Town of Shelby, 174 AD3d 1382, 1385 [2019], lv denied 35 NY3d 902 [2020]). "Thus, under established law, a municipality retains general authority by means of its zoning powers to regulate land use and to regulate or prohibit the use of land within its boundaries for mining operations, although it may not directly regulate the specifics of the mining activities or reclamation process" (Troy Sand & Gravel Co., Inc. v Town of Nassau, 101 AD3d 1505, 1509 [2012] [internal quotation marks, brackets and citations omitted]; see Preble Aggregate v Town of Preble, 263 AD2d 849, 850 [1999], lv denied 94 NY2d 760 [2000]).
Local Law No. 4 does not preempt the MLRL insofar as the setback requirement merely establishes permissible uses of land within the Town (see Town of Riverhead v T.S. Haulers, 275 AD2d at 775). Contrary to the contentions of the taxpayer petitioners and Rifenburg, the setback requirement in and of itself does not reflect an attempt to directly regulate the specifics of mining activities (see Troy Sand & Gravel Co., Inc. v Town of Nassau, 101 AD3d at 1509). Instead, it constitutes a valid exercise of control over permissible land use in a particular zoning area (see ECL 23-2703 [2] [b] [iii]). As to the reclamation bond requirement, this does "not conflict with the legislative intent behind the [MLRL]" (Matter of Briarcliff Assoc. v Town of Cortlandt, 144 AD2d 457, 460 [1988], lv denied 74 NY2d 611 [1989]).
Troy Sand and Bonded Concrete argue that Local Law No. 4 regulates the business operation of the land based upon the identity of the land user, regulates the business operation of the land user as well as the local competitive market of the mining industry and precludes the use of their property for purposes for which it is reasonably adapted, thereby rendering Local Law No. 4 ultra vires. We agree with Supreme Court that this contention is unavailing. It is well settled that "[a] municipality is not obliged to permit the exploitation of any and all natural resources within the [municipality] as a permitted use if limiting that use is a reasonable exercise of its police powers to prevent damage to the rights of others and to promote the interests of the community as a whole" (Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d at 684). Moreover, the MLRL "does not prohibit local authorities from enacting zoning ordinances which forbid mining as a use in a particular zone" (Matter of Voorheesville Sand & Stone Co. v Town of New Scotland, 136 AD2d 849, 850 [1988]; see ECL 23-2703 [2] [b]). As Local Law No. 4 reflects a reasonable exercise of the Town Board's authority to promote the interests of the community, rather than an attempt to regulate land use by the identity of particular users and to regulate the mining industry, it is not ultra vires.
The taxpayer petitioners further argue that Supreme Court erroneously dismissed their petition/complaint because the Town Board failed to meet the standards enunciated in Berenson v Town of New Castle (38 NY2d at 107). Specifically, the taxpayer petitioners contend that the Town Board failed to comply with the notice and due process requirements in the US and NY Constitutions, the treatment of religious institutional land uses, low income residents, and agricultural land uses. It is well established that "because zoning is a legislative act, zoning ordinances enjoy a strong presumption of constitutionality and impose upon the party who would attack them the heavy burden to overcome that presumption beyond a reasonable doubt" (Matter of Village Bd. of Trustees of Vil. of Malone v Zoning Bd. of Appeals of Vil. of Malone, 164 AD2d 24, 27 [1990]; see Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council, 91 NY2d 161, 165 [1997]). "Zoning ordinances are susceptible to constitutional challenge only if clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare" (Berenson v Town of New Castle, 38 NY2d at 107 [internal quotation marks and citations omitted]; see Matter of Calverton Manor, LLC v Town of Riverhead, 160 AD3d at 836-837). "Absent a showing by [petitioners] of an exclusionary purpose behind a zoning ordinance, or that the zoning authority . . . failed to meet the criteria set forth in Berenson, the presumption of constitutionality which accompanies the legislative act must prevail unless the ordinance is without a doubt facially invalid" (Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville, 51 NY2d 338, 346 [1980], cert denied 450 US 1042 [1981]). To that end, the Berenson test "has two prongs: first, a zoning ordinance must provide a properly balanced and well-ordered plan for the community, and second, it must adequately consider regional needs and requirements" (Continental Bldg. Co. v Town of N. Salem, 211 AD2d 88, 92 [1995], appeal dismissed 86 NY2d 818 [1995]; see Berenson v Town of New Castle, 38 NY2d at 110-111).
The taxpayer petitioners attempted to demonstrate that Local Law No. 4 eliminates affordable housing options for socioeconomically challenged residents and migrant workers, contending that mobile homes were eliminated as a permitted use in agricultural districts. However, Local Law No. 4 expressly provides for the permitted use of mobile homes in the residential agricultural district. Regarding the taxpayer petitioners' contentions concerning religious institutions, multiple zoning districts detailed in Local Law No. 4 provide for the permitted uses of churches, church schools and religious institutions. As detailed in the plan, and reflected in Local Law No. 4, the Town Board sufficiently provided a properly balanced and well-ordered plan for the community, thereby satisfying the first prong of the Berenson test.
Turning to the second prong, the Town Board drafted Local Law No. 4 in a manner that adequately considered the regional needs and requirements. The plan identified the community's "need for a variety of housing types with a range of affordability," and Local Law No. 4 permits one-family, two-family and multifamily dwellings and mobile homes in multiple zoning districts, thereby reflecting consideration of the Town's needs and requirements as they relate to housing. As there is no indication in the record that persons of low or moderate income were excluded from housing, and the zoning districts reflect the regional needs and requirements identified in the vision and goals of the plan, Supreme Court properly dismissed the taxpayer petitioners' cause of action in this regard, upholding the constitutionality of Local Law No. 4.
Rifenburg contends that Local Law No. 4 improperly delegates legislative functions insofar as the law requires the Planning Board to make "mandatory findings" — as well as findings that are impossible to make — without providing specific standards to guide the actions of the Planning Board. We agree with Supreme Court that this contention lacks merit. "[L]egislative delegations of power to administrative bodies are legitimate so long as adequate standards exist to channel the exercise of that power. The standards need only be prescribed in so much detail as is reasonably practicable in light of the complexities of the area to be regulated" (Waste Stream Mgt. v St. Lawrence County, 156 AD2d 111, 115 [1990] [internal quotation marks and citations omitted]; see Matter of Sleepy Hollow Lake v Public Serv. Commn. of State of N.Y., 43 AD2d 439, 443 [1974], lv denied 34 NY2d 519 [1974]). Section 250-101 (B) of Local Law No. 4 provides that "[t]he Planning Board shall make . . . required findings . . . and recommend approval, approval with modifications or disapproval to the Town Board of [any] such [planned development district] application" (emphasis added). Section 250-103 (A) of Local Law No. 4 then indicates that, "[u]pon receipt of the Planning Board's findings and recommendation, the Town Board may then consider the legal establishment of the planned development district through a Zoning District Map amendment." The plain text of Local Law No. 4 demonstrates that the Planning Board's findings are not determinative. Rather, pursuant to Local Law No. 4, the Town Board retains the decision-making authority in this regard and only considers the Planning Board's findings in doing so. As such, there is no improper delegation of legislative authority.
Petitioners argue that the law is impermissibly vague and inconsistent due to the inconsistency between the text of the law and the attendant zoning map. Supreme Court acknowledged the validity of petitioners' concern, declined to invalidate Local Law No. 4 due to this "detail" and instructed the Town to correct same. The Town has done so. Despite this, Troy Sand asks this Court not to consider this new map (which, de facto came into existence post litigation), or, if we do, to accord it a reading so as to find it still so confusing as to render the entire zoning law null and void. We decline to do so. The text of Local Law No. 4, together with the revised zoning map, afford "a person of ordinary intelligence fair notice" of what conduct is prohibited or permitted (Matter of Turner v Municipal Code Violations Bur. of City of Rochester, 122 AD3d 1376, 1377-1378 [2014]).
Any remaining contentions raised by petitioners have been reviewed and found to be lacking in merit.[FN2]
Garry, P.J., Lynch, Clark and Devine, JJ., concur.
ORDERED the judgment is modified, on the law, without costs, by (1) reversing so much thereof as found that petitioners Daniel H. Holser and Richard Hastings lacked standing in proceeding No. 2 and (2) annulling § 250-99 (C) and (G) of Local Law No. 4 (2017) of the Town of Sand Lake, and, as so modified, affirmed.



Footnotes

Footnote 1: Under SEQRA, a "negative declaration" indicates that an environmental impact statement is not necessary.

Footnote 2: Although Supreme Court's ordered paragraph indicates that it was dismissing "the petition" in these hybrid matters, the court's decision clearly states at the outset that it was dismissing "the petitions-complaints" indicating that all three CPLR article 78 petitions were dismissed, as well as the requests for declaratory relief.