Matter of CREDA, LLC v City of Kingston Planning Bd. (2023 NY Slip Op 00355)

Matter of CREDA, LLC v City of Kingston Planning Bd.

2023 NY Slip Op 00355

Decided on January 26, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 26, 2023

533665
[*1]In the Matter of CREDA, LLC, Petitioner, and 61 Crown Street, LLC, et al., Appellants,
v
City of Kingston Planning Board et al., Respondents, et al., Respondent.

Calendar Date:November 14, 2022

Before:Garry, P.J., Clark, Aarons, Pritzker and McShan, JJ.

Rodenhausen Chale & Polidoro LLP, Rhinebeck (Janis M. Gomez Anderson of counsel) and Lewis & Greer, PC, Poughkeepsie (J. Scott Greer of counsel), for appellants.
Barbara Graves-Poller, Corporation Counsel, Kingston, for City of Kingston Planning Board and another, respondents.
Moriello Law, Kingston (Michael A. Moriello of counsel), for JM Development Group, LLC and others, respondents.

Clark, J.
Appeal from a judgment of the Supreme Court (Richard Mott, J.), entered June 14, 2021 in Ulster County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review, among other things, a determination of respondent City of Kingston Planning Board adopting a negative declaration of environmental significance.
This appeal concerns another challenge to the Kingstonian Project (hereinafter the project), a plan to redevelop certain parcels of land located in respondent City of Kingston, Ulster County (see Matter of 61 Crown St., LLC v City of Kingston Zoning Bd. of Appeals, ___ AD3d ___, 2022 NY Slip Op 06845 [3d Dept 2022]; Matter of 61 Crown St., LLC v New York State Off. of Parks, Recreation & Historic Preserv., 207 AD3d 837 [3d Dept 2022]; 61 Crown St., LLC v City of Kingston Common Council, 206 AD3d 1316 [3d Dept 2022], lv denied 39 NY3d 904 [2022]). The project, as proposed, would lead to the demolition of an outdoor parking lot and a defunct municipal parking garage located in the Kingston Stockade Historic District (hereinafter KSHD), and the redevelopment of approximately 2.5 acres of land into an apartment building, a boutique hotel, retail space, a pedestrian plaza and a parking garage. Pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), respondent City of Kingston Planning Board established itself as the lead agency and classified the project as a type I action (see 6 NYCRR 617.4). Respondent Kingstonian Development, LLC, as the project sponsor, submitted part 1 of the full environmental assessment form (hereinafter FEAF). SEQRA then required the Planning Board, as the lead agency, to inventory potential resources that could be affected by the project and complete parts 2 and 3 of the FEAF (see 6 NYCRR 617.6 [a] [2]).
Thereafter, the project's developers — respondents JM Development Group, LLC, Herzog Supply Co., Inc., Kingstonian Development, LLC and Patrick Page Holdings, L.P. (hereinafter collectively referred to as the developers) — appeared before the Planning Board and met with the City's Historic Landmarks Preservation Commission to present their proposal for the project. Following a request from the Preservation Commission, the developers informed the Planning Board that they would be removing a breezeway from the plan. The developers also appeared at a public Planning Board meeting where members of the public voiced their opinions on the project, and the developers outlined various changes and an upcoming traffic study. After the developers conducted various studies and reports directed by the Planning Board, those reports were made available for public review.
On December 16, 2019, after numerous meetings, the Planning Board issued a negative declaration. Through the negative declaration, the Planning Board concluded that there were no significant adverse effects associated with the project, as modified through the SEQRA process. The declaration also [*2]identified the interested agencies, the projects' consultants, the meetings held regarding the project and the reports on which the Planning Board relied in reaching its determination.
Petitioner Creda, LLC commenced the instant CPLR article 78 proceeding in January 2020. Soon after, the owners of certain neighboring properties — petitioners 61 Crown Street, LLC, 311 Wall Street, LLC, 317 Wall Street, LLC, 323 Wall Street Owners, LLC, 63 North Front Street, LLC, 314 Wall Street, LLC and 328 Wall Street, LLC (hereinafter collectively referred to as petitioners) — filed a motion to intervene as party petitioners; Supreme Court granted said motion. Petitioners then filed an amended petition through which they alleged that the Planning Board failed to follow substantive and procedural requirements of SEQRA and sought the annulment of the negative declaration, as well as of a subdivision approval that the Planning Board granted for the project.
Following joinder of issue, Supreme Court noted that petitioners had standing to challenge the negative declaration due to the proximity of their properties to the site of the project. Ultimately, however, Supreme Court found that the negative declaration was supported by the record and that the Planning Board appropriately identified, investigated and discussed the potential adverse impacts that the project would have on the KSHD. Supreme Court did not address petitioners' challenges to the subdivision approval, finding that "any remaining contentions [were] rendered academic" by its findings regarding the negative declaration, and dismissed the petition. Petitioners appeal.
Initially, we disagree with the contention raised by the City and the Planning Board (hereinafter collectively referred to as the municipal respondents) that petitioners lack standing to challenge the negative declaration. "To establish standing in the SEQRA context, petitioners were obliged to establish both an injury-in-fact and that the asserted injury was within the zone of interests sought to be protected by SEQRA" (Matter of Peachin v City of Oneonta, 194 AD3d 1172, 1174 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]; see Matter of Cady v Town of Germantown Planning Bd., 184 AD3d 983, 986 [3d Dept 2020]). "[S]tanding to challenge an alleged SEQRA violation by a governmental entity requires a petitioner to demonstrate that it would suffer direct harm, injury that is in some way different from that of the public at large" (Matter of Hohman v Town of Poestenkill, 179 AD3d 1172, 1173 [3d Dept 2020] [internal quotation marks and citation omitted]; see Schulz v Town Bd. of the Town of Queensbury, 178 AD3d 85, 88 [3d Dept 2019], appeal dismissed 34 NY3d 1177 [2020], lv denied 35 NY3d 1080 [2020], cert denied ___ US ___, 141 S Ct 2513 [2021]). "Petitioners must have more than generalized environmental concerns to satisfy that burden and, unlike in cases involving zoning issues, there is no presumption of standing [*3]to raise a SEQRA or other environmental challenge based on a party's close proximity alone" (Matter of Village of Woodbury v Seggos, 154 AD3d 1256, 1258 [3d Dept 2017] [internal quotation marks, brackets and citations omitted]; accord Matter of Hohman v Town of Poestenkill, 179 AD3d at 1173-1174; see Matter of Peachin v City of Oneonta, 194 AD3d at 1175).
In finding that petitioners have standing to challenge the negative declaration, we note that SEQRA's intended purposes are "to declare a state policy which will encourage productive and enjoyable harmony between [humans] and [their] environment; to promote efforts which will prevent or eliminate damage to the environment and enhance human and community resources; and to enrich the understanding of the ecological systems, natural, human and community resources important to the people of the state" (ECL 8-0101; see 6 NYCRR 617.1). In the context of SEQRA, the term "[e]nvironment" encompasses "resources of agricultural, archeological, historic or aesthetic significance" and "existing community or neighborhood character," among other things (6 NYCRR 617.2 [l]; see ECL 8-0105 [6]). With this in mind, we also note that the KSHD is a unique and historic district "listed on the National Register of Historic Places, tracing back more than 300 years to the nation's colonial period and Revolutionary era" (Matter of 61 Crown St., LLC v New York State Off. of Parks, Recreation & Historic Preserv., 207 AD3d at 837-838). Although proximity to a project, alone, is insufficient to grant standing to challenge a negative declaration, petitioners own property within the unique area that is the KSHD, and the connection between their properties and the KSHD's historical resources and community character "is more than that of the general public" (Matter of Save the Pine Bush, Inc. v Common Council of the City of Albany, 13 NY3d 297, 306 [2009]). Further, petitioners' allegations — that the project's size, scope and appearance will drastically reduce the historical significance of the KSHD, cause the loss of archeological resources that only exist within the KSHD and change the community's quaint character — fall within SEQRA's stated purpose of protecting the environment. Accordingly, petitioners' allegations aimed at protecting the unique nature of the KSHD, considered alongside their properties' distinct connection to the KSHD's historical resources, sufficiently articulate an injury different than that of the public at large; thus, we find that they have standing to challenge the negative declaration (see id. at 305; Matter of Cady v Town of Germantown Planning Bd., 184 AD3d at 986; see also Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake, 185 AD3d 1306, 1308-1309 [3d Dept 2020], appeal dismissed 36 NY3d 943 [2020], lvs denied 36 NY3d 913 [2021]).
Turning to petitioners' challenges to the negative declaration, we note that "it is not the role of the courts to weigh the desirability of any action or choose [*4]among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416 [1986]; accord Matter of Barnes Rd. Area Neighborhood Assn. v Planning Bd. of the Town of Sand Lake, 206 AD3d 1507, 1509 [3d Dept 2022]). Petitioners incorrectly assert that the Planning Board was required to complete an environmental impact statement; SEQRA only requires the completion of an environmental impact statement where the lead agency has issued a positive declaration of a significant adverse environmental impact (see Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake, 185 AD3d at 1313; Matter of Brunner v Town of Schodack Planning Bd., 178 AD3d 1181, 1182 [3d Dept 2019]; 6 NYCRR 617.1 [c]; 617.2 [ad]). Petitioners' contention that part 1 of an FEAF must be updated and recirculated to involved agencies identified after its submission is belied by SEQRA's attendant regulations, which only require the sponsor to list the agencies that the sponsor "has been able to identify, exercising all due diligence" (6 NYCRR 617.6 [a] [2]). Rather, as new information and concerns were raised during parts 2 and 3 of the FEAF, the Planning Board properly engaged in an extensive, "open and deliberative process" with the developers, the public, and all then-identified involved agencies, thereby fulfilling the procedural requirements of SEQRA (Matter of Merson v McNally, 90 NY2d 742, 754 [1997]; see generally 6 NYCRR part 617).
Additionally, petitioners challenge the negative declaration insomuch as the Planning Board found that the project would not cause significant adverse impacts to historic resources, archeological resources and community character.[FN1] "Judicial review of an agency determination under SEQRA is limited to whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 231-232 [2007] [internal quotation marks and citations omitted]; see Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d 416, 430 [2017]). "A court may only annul an agency's determination to issue a negative declaration where it is arbitrary, capricious or unsupported by the evidence" (Matter of Gabrielli v Town of New Paltz, 93 AD3d 923, 924 [3d Dept 2012] [internal quotation marks and citation omitted], lv denied 19 NY3d 805 [2012]; accord Matter of Hohman v Town of Poestenkill, 179 AD3d at 1174).
Regarding historic and archeological resources, the record reflects that the Planning Board received input from the public and from several involved agencies, including the Preservation Commission, the Heritage Area Commission and the State Office of Parks, Recreation and Historic Preservation, the latter of which highlighted the monolithic nature of the project and the closing of a [*5]historic street as areas of concern. Thereafter, the developers modified the project's design, construction materials and colors to better harmonize with the KSHD, and removed plans for the construction of a breezeway that would have led to closing said street. Although the Planning Board noted the large scale of the project, it highlighted the visual changes undertaken, such as the camouflaging of the parking garage and faÇade continuity, to significantly preserve the historic nature and views found within the KSHD. An archeological report was also conducted, and the Planning Board noted that prior unrelated construction had already affected archeological remains in the project's site; regardless, because the project would include ongoing archeological testing to preserve any sites of importance, the project would not have a significant adverse impact upon archeological resources.
Petitioners further contend that the negative declaration relating to community character was only supported by the project's consistency with zoning, but such claim is unsupported by the record. While the Planning Board found that the project would comply with the City's zoning code, which encouraged mixed use, mixed income, pedestrian-friendly neighborhoods,[FN2] it also noted that the project would add to the recent revitalization of the City. To that end, in addition to eliminating the breezeway that would have closed a historic street, the project's design provided for an outdoor plaza for the public to congregate and additional elevated walkways that allowed for increased pedestrian accessibility around the KSHD. As a result, the Planning Board found that the project would not have a significant adverse impact upon the community character.
The record before us is extensive, and it details input from various involved agencies, numerous public hearings, visual studies and expert examinations and recommendations, among other things. The record also shows that the Planning Board engaged in an open and deliberative process which considered the extensive data gathered and concerns raised, and which led to various modifications to the project to mitigate or negate the significance of the project's potential adverse environmental impacts (see Matter of Merson v McNally, 90 NY2d at 755-756). In light of such record, the determinations detailed in the negative declaration are not arbitrary or capricious, as the Planning Board identified the appropriate environmental concerns, took a hard look at their impact and provided reasoned explanations for its determinations (see Matter of Save the Pine Bush, Inc. v Town of Guilderland, 205 AD3d 1120, 1124-1125 [3d Dept 2022]; Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake, 185 AD3d at 1312-1313; Matter of Brunner v Town of Schodack Planning Bd., 178 AD3d at 1183-1184).
Lastly, petitioners' challenge to the subdivision approval, which was solely premised upon the annulment of the negative declaration, has been rendered [*6]academic by this decision.
Garry, P.J., Aarons, Pritzker and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Petitioners, through their reply brief, concede that their argument regarding the alienation of parkland was foreclosed by our decision in 61 Crown St., LLC v City of Kingston Common Council (see 206 AD3d at 1318-1319).

Footnote 2: Only a small portion of the project site required rezoning, and the developers submitted such application for that portion during the SEQRA process; the entire site for the project is now properly zoned.