Matter of Bigelow v Town of Willsboro Planning Bd. (2025 NY Slip Op 06105)

Matter of Bigelow v Town of Willsboro Planning Bd.

2025 NY Slip Op 06105

Decided on November 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 6, 2025

CV-24-0303
[*1]In the Matter of Tammy Bigelow et al., Appellants,
v
Town of Willsboro Planning Board et al., Respondents.

Calendar Date:September 2, 2025

Before:Garry, P.J., Pritzker, McShan, Powers and Mackey, JJ.

Norfolk Beier PLLC, Lake Placid (Matthew D. Norfolk of counsel), for appellants.
Miller, Mannix, Schachner & Hafner, LLC, Glens Falls (Jacquelyn P. White of counsel), for Town of Willsboro Planning Board, respondent.
Niles & Bracy, PLLC, Plattsburgh (John F. Niles of counsel), for Christine T. Benedict and others, respondents.

Powers, J.
Appeal from a judgment of the Supreme Court (Richard Meyer, J.), entered February 5, 2024 in Essex County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Town of Willsboro Planning Board approving the development of a self-storage facility.
After having previously purchased certain real property in the Town of Willsboro, Essex County, respondent Christine Benedict and Robert Benedict formed respondent Willsboro Self-Storage, LLC in 2021 for the purpose of constructing and operating a self-storage facility to be located thereon. The lot in question bisects two zoning districts and, as a result, lays partially in the Highway Commercial 1 (hereinafter HC-1) zoning district and partially in the Residential Medium Density 2 (hereinafter RM-2) zoning district.
In May 2021, the Benedicts applied to respondent Town of Willsboro Planning Board for site plan approval for the project, which was approved later that month. However, the Town's Code Enforcement Officer subsequently notified them that a special use permit would also be necessary as the proposed construction crossed into the RM-2 district and the operation of a self-storage facility was a commercial use that was not permissible in the RM-2 district without such a permit.[FN1] The Benedicts then applied for a special use permit in August 2021. The application was discussed at multiple meetings of the Planning Board before it adopted a negative declaration pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), granted the requested special use permit and readopted the previously issued site plan approval in October 2021.[FN2] Petitioners, however, commenced a proceeding challenging that determination, and Supreme Court ultimately granted the requested relief and annulled the Planning Board's grant of the special use permit in a June 2022 judgment. The court found that, pursuant to Town of Willsboro Zoning Law § 4.24, the only way to permissibly operate the facility on that portion of the property falling in the RM-2 district or the permissible 30-foot extension was by amendment of the zoning map (see NY St Cts Elec Filing [NYSCEF] Doc No. 61, judgment, in Matter of Bigelow v Town of Willsboro Planning Board, Sup Ct, Essex County, index No. CV-21-0567).
In April 2022, while the first proceeding remained pending before Supreme Court, Christine Benedict submitted a new application for site plan approval on behalf of herself and the Estate regarding the lot in question. The proposed plan was largely consistent with the prior proposal, but the new plan adjusted the size of the buildings such that both would lie completely within the HC-1 zoning district or the permissible 30-foot extension thereof. The application was discussed briefly at the next regularly scheduled meeting of the Planning Board and was approved at that time as an alternative to the first plan in the event that it did not withstand [*2]judicial scrutiny. In response, petitioners commenced this proceeding seeking to annul that approval on the basis that the Planning Board failed to comply with the dictates of both SEQRA and the Open Meetings Law. In a February 2024 judgment, Supreme Court found that, although the Planning Board had failed to comply with the requirement that news media be notified of the meeting (see Public Officers Law § 104), this violation did not warrant annulment of site plan approval. In addition, the court found that the Planning Board did not act arbitrarily or capriciously in determining that the "minor" changes to the new plan did not require "additional environmental assessment." As such, the court held that the Planning Board took the requisite hard look at the potential environmental impact of the project as required by SEQRA. The court dismissed the proceeding, and petitioners appeal.
Petitioners maintain that the Planning Board failed to conduct a review of the potential environmental impacts of the project as required by SEQRA and, for this reason, Supreme Court erred in denying that aspect of their petition seeking to set aside site plan approval. "Judicial review of a SEQRA determination is generally limited to whether the determination is arbitrary and capricious, an abuse of discretion, or affected by an error of law" (Matter of Elizabeth St. Garden, Inc. v City of New York, 42 NY3d 992, 994 [2024] [citations omitted]). The role of the courts in this respect "is not to weigh the desirability of any action or choose among alternatives, but to ensure that agencies will honor their mandate regarding environmental protection by complying strictly with prescribed procedures and giving reasoned consideration to all pertinent issues revealed in the process" (id. [internal quotation marks and citation omitted]; see Matter of Creda, LLC v City of Kingston Planning Bd., 212 AD3d 1043, 1047-1048 [3d Dept 2023]).
The Town of Willsboro Zoning Law defines the operation of a self-storage facility as a commercial use and, therefore, a permissible use in a Highway Commercial district so long as site plan approval is granted (see Town of Willsboro Zoning Law art 2; § 4.10). The Planning Board has the discretion to waive site plan review if it determines that the impact of the project will be minor or insubstantial; however, such determination must be made in writing and state the reason for waiving the required site plan review (see Town of Willsboro Zoning Law § 13.12 [2]). In the process of seeking site plan approval, the applicant is to obtain an application from the Code Enforcement Officer, who shall notify the applicant whether a Short Environmental Assessment Form (hereinafter EAF) or Full EAF is required to be submitted with the application (see Town of Willsboro Zoning Law §§ 13.14 [1]; 13.15 [1] [a]). The Planning Board must then determine what type of action the project qualifies as — unlisted, type I or type II — and issue either a negative declaration [*3]or positive declaration for purposes of SEQRA (see Town of Willsboro Zoning Law § 13.15 [1] [c]-[d]). If the Planning Board issues a positive declaration, a Draft Environmental Impact Statement is required to be submitted (see Town of Willsboro Zoning Law § 13.15 [1] [e]). The Zoning Law is unambiguous that "[t]he Site Plan Application shall not be considered approved until the requirements of SEQRA are fulfilled" (Town of Willsboro Zoning Law § 13.15 [1] [d]).[FN3]
As described above, in 2021, the Benedicts applied for site plan approval and then a special use permit in relation to a project on this site. The plan proposed the construction of two buildings, both measuring 30 feet by 120 feet, for the purpose of operating a self-storage facility. Because the proposed construction crossed over into the RM-2 zoning district, the Planning Board issued both site plan approval and a special use permit, which was the subject of the first proceeding in Supreme Court. To remedy the delays caused by that proceeding, Christine Benedict submitted a separate application for site plan approval in April 2022 on behalf of herself and the Estate. It is that second application that is at issue in this proceeding. The plan sought to continue the construction of two buildings meant for self-storage facilities, the first measuring 30 feet by 150 feet and the second measuring 30 feet by 110 feet. These buildings were to fit wholly within the HC-1 zoning district or the permissible 30-foot extension. A plan map was appended to the application depicting the project as well as a letter to the Planning Board providing general details about the project, including the lot coverage and that there was planned to be no septic or sewer on the property. This proposed plan was discussed at the April 26, 2022 meeting of the Planning Board. During this meeting, Christine Benedict referred to the second application as a "back up" to the initial plan and, importantly, the application was approved "as a 'Plan B' " in the event that the initial plan was annulled in the proceeding then still pending before Supreme Court. The record does not reveal that any further discussion regarding the second plan was had.
This is not a situation where the applicant proposed an amendment or modification to a pending application in the face of concerns raised during the review process, representing "the give and take of the application process" (Matter of Granger Group v Town of Taghkanic, 77 AD3d 1137, 1143 [3d Dept 2010] [internal quotation marks and citation omitted], lv denied 16 NY3d 781 [2011]; cf. Matter of West Branch Conservation Assn. v Planning Bd. of Town of Clarkstown, 222 AD2d 513, 514 [2d Dept 1995]; compare Matter of Creda, LLC v City of Kingston Planning Bd., 212 AD3d at 1049). Rather, it is evident from the application materials and the Planning Board minutes that the second application was meant to serve as a separate application for the purpose of bypassing the challenge still pending [*4]in Supreme Court on the first application.
The new application required the Planning Board to either conduct the site plan review process anew or issue a written determination waiving same, neither of which it did (see Town of Willsboro Zoning Law § 13.12 [2]).[FN4] Instead, the Planning Board issued site plan approval with little discussion save for a brief question on the topic of parking and ascertaining the status of the proceeding in Supreme Court challenging the initial plan. Based upon this exceedingly limited discussion of the new plan and the utter failure to set forth a record-based elaboration for its decision to grant site plan approval, we cannot find that the Planning Board "identified the relevant areas of environmental concern, took [the requisite] hard look at them, and made a reasoned elaboration of the basis for its determination," as required by SEQRA (Matter of Bennett v Troy City Council, 231 AD3d 1386, 1388 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Adirondack Historical Assn. v Village of Lake Placid/Lake Placid Vil., Inc., 161 AD3d 1256, 1259-1260 [3d Dept 2018]; compare Matter of Creda, LLC v City of Kingston Planning Bd., 212 AD3d at 1049). Therefore, that part of the court's judgment dismissing the causes of action asserting SEQRA violations must be reversed, and that aspect of the petition seeking to annul the Planning Board's grant of site plan approval granted.
As remittal to the Planning Board is required based upon the foregoing conclusion, we are inclined to briefly address petitioners' otherwise academic Open Meetings Law challenge in an effort to provide guidance upon remittal. Public Officers Law § 104 (1) is clear that "[p]ublic notice of the time and place of a meeting scheduled at least one week prior thereto shall be given or electronically transmitted to the news media and shall be conspicuously posted in one or more designated public locations at least [72] hours before such meeting" (emphasis added). Instead of conceding that it failed to provide notice to news media, the Planning Board asserts that notice of regularly scheduled meetings was posted on the Town website and on the front door of Town Hall. However, both forms of notice are statutorily required. Be that as it may, this error would not separately require annulment of the site plan approval at issue considering the schedule of meetings was publicly posted in multiple locations and the meeting itself was open to the public (see Chestnut Ridge Assoc., LLC v 30 Sephar Lane, Inc., 169 AD3d 995, 998 [2d Dept 2019]; Matter of Fichera v New York State Dept. of Envtl. Conservation, 159 AD3d 1493, 1498 [4th Dept 2018]; Matter of Wilson v Board of Educ. Harborfields Cent. School Dist., 65 AD3d 1158, 1158 [2d Dept 2009], lv denied 13 NY3d 714 [2009]).
Garry, P.J., Pritzker, McShan and Mackey, JJ., concur.
Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the [*5]second and fourth causes of action asserting violations of the State Environmental Quality Review Act; petition granted to the extent of annulling the site plan approval issued by respondent Town of Willsboro Planning Board; matter remitted to respondent Town of Willsboro Planning Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Relevantly, "[i]f a lot lies in two or more zoning districts" within the Town, "each portion of the lot shall be governed by the regulations of the district in which it lies" (Town of Willsboro Zoning Law § 4.24). However, the Zoning Law allows for a 30-foot extension of the less restrictive district into the more restrictive but any extension in excess thereof requires amendment of the zoning map (Town of Willsboro Zoning Law § 4.24).

Footnote 2: Robert Benedict died in September 2021 and respondent Estate of Robert R. Benedict was substituted as a party in all subsequent proceedings, including this appeal.

Footnote 3: The Zoning Law sets forth a nonexhaustive list of facts to be considered by the Planning Board when reviewing a site plan application. These include, in part, the "[l]ocation, arrangement, size, design, and general site compatibility of buildings, lighting, and signs"; "[l]ocation, arrangement, appearance and sufficiency of off-street parking and loading"; "[a]dequacy of stormwater and drainage facilities"; "[a]dequacy, type and arrangement of trees, shrubs and other landscaping constituting a visual and/or noise buffer between the applicant's and adjoining lands, including the maximum retention of existing vegetation"; "[a]dequacy of fire lanes and other emergency zones and to provision of fire hydrants"; "[s]pecial attention [shall be made] to the adequacy and impact of structures, roadways, and landscaping in areas susceptible to ponding, flooding, and/or erosion"; and the "[o]verall impact on the neighborhood including compatibility of design consideration" (Town of Willsboro Zoning Law § 13.17 [1], [3], [5], [7]-[10]).

Footnote 4: Contrary to Supreme Court's conclusion, we cannot say that the Planning Board implicitly determined that the changes from the first plan to the second were minor and that additional environmental review was not necessary. The Planning Board had the discretionary authority to waive site plan review but did not exercise that discretion and instead affirmatively granted site plan approval.