[675 NYS2d 451]

# In the Matter of SAVE OUR FOREST ACTION COALITION, INC., et al., Appellants, v CITY OF KINGSTON et al., Respondents.

Third Department, July 23, 1998

## APPEARANCES OF COUNSEL

*Kronish, Lieb, Weiner & Hellman, L. L. P.,* New York City (*Jay B. Spievack, John A. Morris* and *Jill Orlich* of counsel), for appellants.

*Robert D. Cook, Corporation Counsel* of City of Kingston, for City of Kingston and others, respondents.

*Dennis C. Vacco, Attorney-General,* Albany (*Kathleen Liston Morrison* and *Peter H. Schiff* of counsel), for Department of Environmental Conservation, respondent.

*Michael A. Moriello,* Kingston (*Richard F. Riseley* of counsel), for Kingston Local Development Corporation, respondent.

**OPINION OF THE COURT**

MERCURE, J.

Respondent Kingston Local Development Corporation (hereinafter KLDC) and Huck International, Inc., a major employer in the City of Kingston, Ulster County, cooperated in the selection of a 107-acre parcel for the development of Kingston Business Park as the site for Huck's proposed new manufacturing facility and possible future expansion to accommodate other businesses. In connection with its proposed development of the site, KLDC sought to have respondent City of Kingston rezone the parcel from residential to light manufacturing and also applied to respondent Department of Environmental Conservation (hereinafter DEC) for a State Pollutant Discharge Elimination System (hereinafter SPDES) permit. Following a determination that the project constituted a type I action under the State Environmental Quality Review Act ([hereinafter SEQRA] ECL art 8), respondent City of Kingston Planning Board was designated lead agency. After the filing of a generic environmental impact statement, considerable environmental review and the issuance of findings by the Planning Board, the City made its own findings and amended the zoning classification of the site to M1 Light Manufacturing. DEC also conducted a review of the matter and ultimately determined that individual SPDES permits would not be required.

In April 1996, petitioners commenced this combined CPLR article 78 proceeding and declaratory judgment action. The amended petition/complaint asserted six causes of action alleging, among other things, that DEC violated ECL 17-0801 in failing to require individual SPDES permits for the discharge of storm water runoff and that the actions of the City, KLDC, the Planning Board and respondent Mayor of Kingston (hereinafter collectively referred to as respondents) were arbitrary and capricious in that the rezoning of the parcel constituted illegal spot zoning, was inconsistent with the Local Waterfront Revitalization Program and was performed without adequate consideration of alternative sites. Petitioners thereafter moved for summary judgment on their declaratory judgment causes of action, DEC cross-moved to convert the first cause of action to a CPLR article 78 proceeding and to dismiss the petition/complaint against it, and respondents cross-moved

to dismiss the petition/complaint against them. Supreme Court granted both cross motions and dismissed the petition/complaint in its entirety. Petitioners appeal.

As a threshold matter, we are unpersuaded by respondents' contentions that the appeal is moot or that the issues raised in the petition/complaint are not justiciable. First, although it appears that Huck's manufacturing facility was completed and put into production during the pendency of the proceeding/action, the record shows that petitioners made an effort to enforce a stay pursuant to General City Law § 38 and in fact made application for leave to appeal (albeit unsuccessfully) Supreme Court's adverse ruling on their motion for a stay. Under the circumstances, we conclude that petitioners attempted to preserve their rights and that respondents were "placed on notice that if they proceeded with construction, it would be at their own risk" (*Matter of Watch Hill Homeowners Assn. v Town Bd.*, 226 AD2d 1031, 1032, *lv denied* 88 NY2d 811).

Second, we agree with petitioners that their declaratory judgment causes of action do not challenge nonjusticiable decisions involving policy and the allocation of local resources (*see, Jiggetts v Grinker*, 75 NY2d 411; *Klostermann v Cuomo*, 61 NY2d 525; *see generally*, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3001:4, at 433-434); rather, they challenge respondents' administrative determinations as arbitrary and capricious and violative of controlling statutes and regulations. As such, petitioners' claims are justiciable (*see, Matter of King v Cuomo*, 81 NY2d 247, 255; *Jiggetts v Grinker, supra*, at 415; *Matter of Constantine v White*, 166 AD2d 59, 61).

Turning now to the merits, we are unpersuaded by petitioners' contention that, in the face of conflicting evidence as to the propriety of the challenged determinations, Supreme Court erred in granting summary judgment but instead should have conducted a trial of the disputed issues. In our view, traditional summary judgment analysis does not apply in a case, as this one, where administrative agencies' actions are attacked as arbitrary and capricious. Generally, the determination of such an action or proceeding (whether pleaded as a plenary action, a CPLR article 78 proceeding or a combined action/proceeding) is based not on the resolution of factual issues, but on the purely legal consideration of whether the challenged determinations were reached in accordance with applicable statutory and regulatory provisions and have a rational

basis (*see, Matter of Frederick v Civil Serv. Commn.*, 175 AD2d 428, 429; *Matter of Currier v Tompkins-Seneca-Tioga Bd. of Coop. Educ. Servs.*, 80 AD2d 979). Applying traditional administrative law analysis, it makes no difference whether there was conflicting evidence or opinion which, if credited by the agency, might have supported a contrary conclusion, for a court has no authority to substitute its judgment for that of the agency so long as the agency's determination has a rational basis in fact (*see, e.g., Matter of Catskill Ctr. for Conservation & Dev. v New York State Dept. of Envtl. Conservation*, 235 AD2d 4, *lv denied* 91 NY2d 805; *Aldrich v Pattison*, 107 AD2d 258; *Congdon v Washington County*, 134 Misc 2d 765, 771, *affd* 130 AD2d 27, *lv denied* 70 NY2d 610).

Considered in that light, we conclude that Supreme Court did not err in granting respondents' cross motions for summary judgment, as petitioners failed to demonstrate that the rezoning determination was arbitrary and capricious. Fundamentally, zoning determinations enjoy a strong presumption of validity, which can only be overcome by a showing that the decision to rezone was unreasonable and arbitrary (*see, Matter of Daniels v Van Voris*, 241 AD2d 796; *see also, Matter of Town of Bedford v Village of Mount Kisco*, 33 NY2d 178; *Rodgers v Village of Tarrytown*, 302 NY 115). In fact, if the validity of the determination is even " 'fairly debatable' " (*Shepard v Village of Skaneateles*, 300 NY 115, 118), it must be sustained (*see, Matter of Town of Bedford v Village of Mount Kisco, supra,* at 186).

Although no single factor is dispositive, in evaluating a claim of spot zoning a court may consider several factors, including whether the rezoning is consistent with a comprehensive land use plan, whether it is compatible with surrounding uses, the likelihood of harm to surrounding properties, the availability and suitability of other parcels, and the recommendations of professional planning staff (*see,* 3 Rathkopf, Law of Zoning and Planning § 28.04 [4th ed]). However, the ultimate test is "whether the change is other than part of a well-considered and comprehensive plan calculated to serve the general welfare of the community" (*Matter of Daniels v Van Voris, supra,* at 799; *see, Collard v Incorporated Vil. of Flower Hill*, 52 NY2d 594).

Here, the primary motivation for the zoning amendment was to support local economic development through retention of the City's largest employer and to reap associated economic and tax benefits in connection with the development of a business

park. The determination was made after an extensive review process, including a consideration of the impact on adjoining residential areas, consistency with existing zoning plans, environmental concerns and the availability of other suitable sites. The decision was made after consideration of three other sites, and it should be noted that much of the site will remain undisturbed, with a buffer existing between the business park and adjacent properties. In our view, the record discloses that sufficient "forethought has been given to the community's land use problems" (*Udell v Haas*, 21 NY2d 463, 470) and that there was a "reasonable relation" between the rezoning determination and the worthwhile goal of improving the economic health of the community (*Asian Ams. for Equality v Koch*, 72 NY2d 121, 132). We also reject the contention that the rezoning determination was inconsistent with the Local Waterfront Revitalization Program, adopted in 1992 to promote the goals (among others) of improving coastal areas of the Hudson River and Rondout Creek for water-dependent scenic recreational and economic uses and to improve the existing economic base. The business park is not adjacent to a shoreline and its light industrial zoning is not inconsistent with the plan for moving heavy industrial uses further inland.

█ Finally, we conclude that Supreme Court did not err in granting DEC's motion for summary judgment. Pursuant to 6 NYCRR 751.3 (a) (7), a SPDES permit is not required with respect to "[u]ncontrolled discharges composed entirely of storm runoff, when these discharges are uncontaminated by any industrial or commercial activity, unless the particular storm runoff discharge has been identified * * * as a significant contributor of pollution". In this case, DEC initially stated that a SPDES permit would be required for storm runoff, but further review disclosed that only one area of the Huck facility, the loading dock, was identified as having a potential for subjecting storm water to contact with industrial pollutants. Notably, the plans for the loading dock included a 1,000-gallon spill containment tank which operated to isolate contaminated water. After consultation with DEC, the plans were revised to include a "deadman's switch" to prevent accidental spills by necessitating that the switch be operated manually in order to permit discharges from the tank. As a result, DEC concluded that none of the storm runoff would come in contact with any manufacturing operation and that the above-stated exemption would therefore apply. In our view, DEC's conclusions were not contrary to applicable law and were by no means irrational

(*see*, *Matter of Bio-Tech Mills v Williams*, 105 AD2d 301, 306, *affd* 65 NY2d 855).

The parties' additional contentions are either academic or have been considered and found to be unavailing.

MIKOLL, J. P., CREW III and YESAWICH JR., JJ., concur.

Ordered that the judgment is affirmed, without costs.