[716 NYS2d 786]

In the Matter of YELLOW LANTERN KAMPGROUND et al., Appellants, v TOWN OF CORTLANDVILLE et al., Respondents.

Third Department, November 28, 2000

**APPEARANCES OF COUNSEL**

*J. Mark McQuerrey,* Hoosick Falls, for appellants.

*Folmer & Hartnett,* Cortland (*John B. Folmer* of counsel), for Town of Cortlandville and another, respondents.

*Bond, Schoeneck & King, L. L. P.,* Syracuse (*Kevin M. Bernstein* of counsel), for Suite-Kote Corporation, respondent.

**OPINION OF THE COURT**

MERCURE, J. P.

Respondent Suit-Kote Corporation (hereinafter respondent) owns three parcels of real property in the Town of Cortlandville, Cortland County. It has operated an asphalt plant on one of the parcels since the early 1960's. An over-all revision of the Zoning Ordinance of respondent Town of Cortlandville in 1968 resulted in a rezoning of the area of the Town south of Lorings Crossing Road between the Tioughnioga River and State Route 13, including respondent's property, from industrial to business. Respondent's operation has continued as a nonconforming use since that time, but appears to have increased in volume and scope under the terms of several variances granted by

the Town of Cortlandville Zoning Board of Appeals.[1] A further over-all revision of the Zoning Ordinance conducted in 1986 left intact the property's business zoning.

In November 1998, respondent made application to the Town Board for the rezoning of all three parcels from business to industrial. In that connection, respondent submitted a five-year plan for certain proposed plant modifications[2] and also sought the Town Board's issuance of an aquifer protection district special permit and site plan approval from respondent Town Planning Board. Subsequently, the Town Planning Board referred respondent's requests to the County Planning Board. The County Planning Department thereafter recommended approval of the site plan and aquifer permit applications along with conditions, and recommended that the request for the zoning change be returned for local determination. Those recommendations were adopted by the County Planning Board on December 16, 1998. In January 1999, the Town Board declared itself the lead agency under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) for the zoning change request and for review of the site plan and aquifer permit applications.

On February 17, 1999, the Town Board conducted a public hearing on respondent's applications. At the conclusion of the hearing, the Town Board completed part 2 of an environmental assessment form (hereinafter EAF), which classified various impacts as either small to moderate or potentially large. The Town Board did not complete part 3 of the EAF, but nonetheless issued a negative declaration upon its findings that the concerns identified in the EAF could be mitigated by respondent's compliance with the site review and aquifer permit process to be conducted in the future, as well as complying with applicable State and Federal regulations.

On February 23, 1999, the Town Planning Board held a hearing, at which it heard comments on respondent's proposal, respondent's negative impacts on the community and a pos-

---

1. Although not an issue before us, we note the apparent absence of authority in the Town Zoning Ordinance or elsewhere for the grant of a zoning variance authorizing the expansion of a nonconforming use on a finding of unnecessary hardship arising solely out of the fact that a prior rezoning had rendered the owner's use of the property a nonconforming one (see, Town Law § 267-b [2] [b]).

2. The specific project proposed by respondent included the replacement of 11 tanks, the relocation of one tank, the outright removal of two tanks, and the installation of 18 tanks, an 11-foot by 60-foot addition to the mill building, two loading racks, and a 40-foot by 100-foot pole barn.

sible alternative location for the plant. At the conclusion of the hearing, the Town Planning Board recommended approval of the site plan and the aquifer permit with conditions but recommended the rezoning of only the parcel upon which respondent's business was being conducted, i.e., parcel 22, consisting of 13.34 acres of land fronting on Lorings Crossing Road. On February 24, 1999, the Town Board approved the zoning change for all three of respondent's parcels except for one acre fronting on Route 13. On March 3, 1999, the Town Board conducted a hearing on respondent's aquifer permit and subsequently approved the application. The Town Board then adopted Local Laws, 1999, No. 2 of the Town of Cortlandville codifying the zoning change.

In March 1999, petitioners, a seasonal campground located on Route 13 that abuts one of the disputed parcels and its owner, commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking, *inter alia*, to annul the Local Law upon the grounds that the zoning change constituted impermissible "spot zoning" and that the Town Board violated SEQRA by failing to complete part 3 of the EAF and by issuing the equivalent of a conditional negative declaration. Following joinder of issue, respondent moved for summary judgment. Finding that the Town Board had complied with all applicable SEQRA requirements and that there was a rational basis for the zoning change, Supreme Court granted the motion and dismissed the petition/complaint against all respondents. Petitioners appeal.

█ Initially, we agree with petitioners' contention that the Town Board engaged in impermissible spot zoning in approving the zoning change. The classic definition of spot zoning, as enunciated by the Court of Appeals in the case of *Rodgers v Village of Tarrytown* (302 NY 115), is:

> "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners * * *, 'spot zoning' is the very antithesis of planned zoning" (*id.*, at 123-124 [citations omitted]).

Among the factors to be considered in evaluating a claim of spot zoning are "whether the rezoning is consistent with a comprehensive land use plan, whether it is compatible with surrounding uses, the likelihood of harm to surrounding properties, the availability and suitability of other parcels, and the

recommendations of professional planning staff" (*Matter of Save Our Forest Coalition v City of Kingston*, 246 AD2d 217, 221). No single factor is dispositive and "the ultimate test is 'whether the change is other than part of a well-considered and comprehensive plan calculated to serve the general welfare of the community'" (*id.*, at 221, quoting *Matter of Daniels v Van Voris*, 241 AD2d 796, 799).

In this case, the Town Board engaged in no reasoned consideration of any of the foregoing factors but instead grounded its determination solely on the economic benefit the community would derive from respondent's continued, and possibly expanded, operation and its conclusion that the rezoning would not adversely affect surrounding uses because, even absent the requested rezoning, respondent would still be operating its business as a nonconforming use. As properly recognized by petitioners, that kind of reasoning would justify the transformation of substantially any nonconforming use into a conforming one by the facile device of rezoning the affected parcels. Rezoning on that basis impermissibly "rewards the nonconforming user, contravenes the strong policy intended to achieve the ultimate elimination of nonconforming uses * * * and diminishes the effectiveness of the comprehensive zoning plan" (*Matter of Augenblick v Town of Cortlandt*, 104 AD2d 806, 815 [Lazer, J., dissenting], *revd on dissenting mem below* 66 NY2d 775 [citations omitted]).

Admittedly, a decision to rezone can be motivated by a desire to promote economic development (*see, Matter of Save Our Forest Coalition v City of Kingston, supra*), but such motivation does not relieve the legislative body of its obligation to consider the proposed use's compatibility with and impact upon surrounding properties and its consistency with the municipality's comprehensive zoning plan. Here, the record fails to set forth the total area of the subject business district or identify the other properties situated in it, the properties surrounding respondent's parcels, the size or location of those properties, the uses to which they have been devoted or the likely affect that the rezoning would have upon them. The record establishes, however, that all other properties in the district consist of residential and light commercial uses and that there are no other industrial users.

Further, the Town Board gave no consideration to alternative sites for respondent's operation within the industrial district (*compare, id.*, at 222) or the extent to which respondent's use is consistent with the Town's comprehensive plan.

We are not persuaded that, because respondent "has become an integral part of the community," its use is necessarily consistent with the comprehensive plan as developed through actual experience. As earlier noted, the fact that the proposed use following rezoning is no different than respondent's current nonconforming use of the property is not a permissible consideration. Although the size of the area to be classified is a valid consideration (*see*, 1 Salkin, New York Zoning Law and Practice § 4:11 [4th ed]), we are unimpressed by respondent's transparent effort to deflect the claim of spot zoning by purposely and artificially inflating the size of land to be reclassified with the inclusion of two additional parcels of its property, and approximately 25 acres of forest land, upon which no industrial use had ever taken place. In any event, the Town Board did not cite to the size of the parcel as a factor supporting its grant of the rezoning request.

[2] We also agree with the contention that by omitting part 3 of the EAF, the Town Board failed to comply with SEQRA. As alluded to earlier, part 2 of the EAF requires the lead agency to classify as small to moderate or as potentially large various impacts on land, water, air, plants and animals, agricultural land resources, aesthetic resources, historic and archeological resources, open space and recreation, critical environmental areas, transportation, energy, public health, growth and character of community or neighborhood, or impacts caused by noise and odor. The instructions specifically provide that if any action in part 2 is identified as a potential large impact, the agency is to complete part 3. In part 3, for every impact identified as potentially large, the agency is to briefly describe the impact, how it could be mitigated or reduced to a small to moderate impact by project changes and, based upon the information available, to decide whether it is reasonable to conclude that the impact is important. To answer the question of importance, the agency is to consider the probability of the impact occurring, the duration of the impact, its irreversibility, including permanently lost resources of value, whether the impact can or will be controlled, the regional consequences of the impact, its potential divergence from local needs and goals, and whether known objections to the project relate to this impact.

There is no question that the Town Board failed to complete part 3 of the EAF and our review of the record provides no support for respondents' contention that in considering whether certain impacts would be small to moderate or potentially

large, performed in connection with part 2 of the EAF, the Town Board engaged in the analysis required under part 3. We are also unpersuaded by respondents' reliance upon 6 NYCRR 617.2 (m) for the proposition that the Town Board was not required to adhere to the methodology of the model full EAF as contained in the appendices to 6 NYCRR 617.20. Notably, 6 NYCRR 617.2 (m) provides that the model EAFs "may be modified by an agency to better serve it in implementing SEQR, provided the scope of the modified form is as comprehensive as the model." By failing to fulfill the requirements of 6 NYCRR 617.2 (m) and 617.7 (b), the Town Board failed to fulfill its obligations under SEQRA, requiring annulment of its negative declaration and its ensuing application approvals (*see, Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd.*, 106 AD2d 868, 869-870, *appeal dismissed* 66 NY2d 896).

In view of the foregoing, we need not consider petitioners' contention that the Town Board impermissibly issued a conditional negative declaration.

PETERS, SPAIN, CARPINELLO and GRAFFEO, JJ., concur.

Ordered that the amended judgment is reversed, on the law, with one bill of costs against respondent Suit-Kote Corporation; petition/complaint reinstated, respondent Suit-Kote Corporation's motion for summary judgment denied, petitioners are awarded partial summary judgment pursuant to CPLR 3212 (b) annulling (1) the Town of Cortlandville Town Board's February 17, 1999 negative declaration, (2) said Town Board's February 24, 1999 and March 3, 1999 resolutions reclassifying real property of respondent Suit-Kote Corporation from a business classification to an industrial classification and approving respondent Suit-Kote Corporation's application for Aquifer Permit No. 12 of 1998, (3) Local Laws, 1999, No. 2 of the Town of Cortlandville, and (4) respondent Town of Cortlandville Planning Board's February 23, 1999 conditional approval of respondent Suit-Kote Corporation's site plan, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.