Matter of Evans v City of Saratoga Springs (2022 NY Slip Op 01079)





Matter of Evans v City of Saratoga Springs


2022 NY Slip Op 01079


Decided on February 17, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 17, 2022

532529
[*1]In the Matter of Dave Evans et al., Appellants,
v
City of Saratoga Springs et al., Respondents.

Calendar Date:January 5, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

Braymer Law, PLLC, Glens Falls (Claudia K. Braymer of counsel), for appellants.
Vincent J. DeLeonardis, City Attorney, Saratoga Springs, for respondents.



Pritzker, J.
Appeal from a judgment of the Supreme Court (Crowell, J.), entered November 9, 2021 in Saratoga County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, among other things, granted respondents' motion for summary judgment dismissing the petition/complaint.
In 2015, respondent City of Saratoga Springs City Council (hereinafter the City Council) adopted an update to respondent City of Saratoga Springs' comprehensive plan. As part of the update, the City Council revised the future land use map that "identif[ied] broad categories of land use" similar to an official zoning map. These revisions were then converted into 18 proposed amendments to the City's official zoning map to comply with state and local law. One of the proposed amendments converted a parcel of land near the intersection of Morgan Street and Myrtle Street in the City of Saratoga Springs, Saratoga County (hereinafter parcel 1), which is owned by Saratoga Hospital,[FN1] from an Urban Residential-1 (hereinafter
UR-1) district, a district for the purpose of "provid[ing] medium density single family residential uses where public infrastructure is available," to an Office/Medical Business-2 (hereinafter OMB-2) district, a district for the purpose of "accomodat[ing] business, medical and professional office uses as well as health related institutional facilities." A UR-1 district is primarily used for single-family residences but may include uses such as private schools and religious institutions, among other things, with a special use permit and site plan approval. An OMB-2 district, however, requires site plan approval and is primarily used for business and medical offices, medical clinics, parking facilities and other ancillary uses.
The City Council then voted to refer these 18 proposed amendments to the Saratoga County Planning Board and the City's Planning Board for advisory opinions on whether the zoning map amendments complied with the comprehensive plan. The County Planning Board subsequently approved the realignment of the zoning map by unanimous vote. The City's Planning Board issued an advisory opinion by unanimous vote stating that the rezoning changes related to parcel 1 were "consistent with the [c]omprehensive [p]lan and not contrary to the general purposes and intent of the [z]oning [o]rdinance," but recommended altering the designation of parcel 1 from OMB-2 to Office/Medical Business-1, which has fewer permitted uses.[FN2] Following the issuance of these advisory opinions, a period of public comment was held in December 2019 and members of the public voiced their opinions on the proposed amendments. The City Council then performed an analysis under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), which culminated in it issuing a negative declaration because the amendments to the zoning map "[would] not have a significant adverse impact on the environment." The City Council then approved [*2]the zoning map amendments, thereby changing the district designation of parcel 1 to OMB-2.
Following the approval of the zoning map amendments, petitioners commenced this combined CPLR article 78 proceeding and action for declaratory judgment in May 2020, which alleged several causes of action, including that the zoning map amendment related to parcel 1 was contrary to the comprehensive plan and local zoning ordinances and that the requirements of SEQRA were not followed during the process of reviewing the zoning map amendments. Respondents moved to dismiss the petition/complaint, which, as part of a stipulation between the parties, was subsequently converted into a motion for summary judgment. In accordance with the stipulation, respondents submitted an answer denying petitioners' assertions and raising numerous affirmative defenses, to which petitioners replied with their own cross motion for summary judgment. Supreme Court granted respondents' motion, denied plaintiffs' cross motion, and dismissed the petition/complaint. Petitioners appeal.
Petitioners contend that the City Council did not comply with the requirements of SEQRA because it failed to take the requisite hard look and improperly segmented the SEQRA review from future plans by Saratoga Hospital to develop parcel 1.[FN3] This Court will not disturb a SEQRA determination "so long as [the lead agency] identified the pertinent areas of environmental concern, took a hard look at them and advanced a reasoned elaboration of the grounds for its determination" (Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1442 [2020] [citations omitted]; see Matter of Hart v Town of Guilderland, 196 AD3d 900, 903-904 [2021]). "Segmentation" of actions involving SEQRA is "the division of the environmental review of an action such that various activities or stages are addressed . . . as though they were independent, unrelated activities, needing individual determinations of significance" (6 NYCRR 617.2 [ah]; accord Matter of Adirondack Historical Assn. v Village of Lake Placid/Lake Placid Vil., Inc., 161 AD3d 1256, 1257 [2018]). "Such division is impermissible when the environmental review of an action is divided into smaller stages in order to avoid the detailed review called for under SEQRA" (Matter of Saratoga Springs Preserv. Found. v Boff, 110 AD3d 1326, 1328 [2013] [citation omitted]; accord Matter of Friends of Stanford Home v Town of Niskayuna, 50 AD3d 1289, 1290 [2008], lv denied 10 NY3d 716 [2008]). "Thus, individual projects should be considered together when they are integrated components of a larger plan, dependent upon one another and sharing a common purpose" (Matter of Friends of Stanford Home v Town of Niskayuna, 50 AD3d at 1290-1291 [citations omitted]). "Conversely, segmentation is allowed when the agency conducting environmental review clearly sets forth the reasons supporting segmentation and demonstrates that such review is clearly no less [*3]protective of the environment" (Matter of Saratoga Springs Preserv. Found. v Boff, 110 AD3d at 1328 [internal quotation marks, brackets and citations omitted]; see Matter of Defreestville Area Neighborhoods Assn. v Town Bd. of Town of N. Greenbush, 299 AD2d 631, 634 [2002]).
As part of their initial petition, petitioners included a negative declaration issued by the City Council as part of its SEQRA review and pages from the FAQ section of Saratoga Hospital's development proposal from 2015. The FAQ pages detailed that Saratoga Hospital's potential development project included a three-story office building as well as 300 parking spaces. The City Council's negative declaration addressed the potential development of parcel 1 by Saratoga Hospital, with the City Council declining "to speculate and meaningfully evaluate potential environmental impacts of [a] hypothetical [h]ospital expansion" that might result if the zoning map amendment were approved. The City Council resolved that if Saratoga Hospital submitted a development application, it would be "subject to evaluation of potential environmental impacts by the appropriately designated SEQRA [l]ead [a]gency and such review will clearly be no less protective of the environment than any hypothetical speculative review that [the City Council] could possibly undertake" at that time. Petitioners also included a February 2019 letter from Saratoga Hospital to its "neighbors" informing the neighbors that the City Council was concluding its work "to align the [C]ity's zoning map to the [C]ity's approved comprehensive plan" and that a medical office building, like that proposed in 2015, is still of interest to the hospital. The hospital went on to state that it "[would] likely be proposing" the medical office project and that the opportunity to revisit the project was "all predicated on how the revised zoning map unfolds."
Respondents, in support of their motion for summary judgment, provided a full environmental assessment form (hereinafter EAF). In completing part 1 of the EAF, the City Council did not complete the section related to proposed and potential development. Part 2 of the EAF had the box for "NO" checked for each section of the form, including the sections for impact on land, impact on surface water, impact on flooding and impact on transportation, among others. Lastly, in part 3 of the EAF, the City Council checked the box stating that no environmental impact statement was required because the zoning map amendment would not cause a "significant adverse impact[] on the environment."
As to the segmentation claim, although the City Council was not presented with any impending, specific development proposals, rezoning parcel 1 was the "first step" in the process of eventually developing parcel 1 (Matter of Defreestville Area Neighborhoods Assn. v Town Bd. of Town of N. Greenbush, 299 AD2d at 633-635 [internal quotation marks and citation omitted]). In essence, before Saratoga Hospital [*4]could move forward with any development and expansion, it needed to acquire the "right" to do so (id. at 633 [internal quotations marks, emphasis and citation omitted]). The zoning map amendment for parcel 1 provided just that; it would be the green light to reignite development plans. Similar to the situation in Matter of Defreestville Area Neighborhoods Assn. v Town Bd. of Town of N. Greenbush (supra), the potential development of the parcel here was not so attenuated from the zoning map amendment that reviewing an expansion of the hospital constituted permissible segmentation (compare Matter of PSC, LLC v City of Albany Indus. Dev. Agency, 200 AD3d 1282, 1289 [2021]). Thus, the City Council was "obligated to consider the impacts to be expected from such future development at the time of rezoning, even absent a specific site plan for the project proposal" (Matter of Defreestville Area Neighborhoods Assn. v Town Bd. of Town of N. Greenbush, 299 AD2d at 633-634). In light of this determination, we cannot find that the City Council took the requisite hard look at the relevant areas of environmental concern prior to issuing its negative declaration as to the zoning amendment of parcel 1 as required by SEQRA, as it did not consider the potential development by Saratoga Hospital (see generally Matter of Kittredge v Planning Bd. of Town of Liberty, 57 AD3d 1336, 1338 [2008]). Therefore, that part of Supreme Court's judgment as granted respondents' motion dismissing the cause of action asserting SEQRA violations as to parcel 1 must be reversed. Further, petitioners' cross motion should be partially granted to the extent of annulling the City Council's SEQRA determination as to parcel 1, and the matter is remitted to the City Council for a full environmental review of the proposed action as to parcel 1, consistent with this decision.
Petitioners also assert that the zoning amendment as to parcel 1 is in clear conflict with the City's comprehensive plan, is contrary to the City's zoning ordinance and constitutes impermissible spot zoning. "A municipality is free to alter its zoning regulations, but must do so in a manner that comports with its comprehensive plan" (Matter of Wir Assoc., LLC v Town of Mamakating, 157 AD3d 1040, 1042-1043 [2018] [citations omitted]; accord Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake, 185 AD3d 1306, 1309 [2020], lv denied 36 NY3d 913 [2021]). Further, zoning determinations "[are] entitled to a strong presumption of validity; therefore, one who challenges such a determination bears a heavy burden of demonstrating, beyond a reasonable doubt, that the determination was arbitrary and unreasonable or otherwise unlawful" (Matter of Birchwood Neighborhood Assn. v Planning Bd. of the Town of Colonie, 112 AD3d 1184, 1185 [2013] [internal quotation marks and citations omitted]; accord Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake, 185 AD3d at 1309). This requires showing that "there [wa]s no reasonable [*5]relation between the end sought to be achieved by the zoning amendment and the means used to achieve that end" (Dodson v Town Bd. of the Town of Rotterdam, 182 AD3d 109, 113 [2020] [internal quotation marks, brackets and citations omitted]; see Matter of Birchwood Neighborhood Assn. v Planning Bd. of the Town of Colonie, 112 AD3d at 1185-1186).
Spot zoning is "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area for the benefit of the owner of said property to the detriment of other owners" (Matter of Rotterdam Ventures, Inc. v Town Bd. of the Town of Rotterdam, 90 AD3d 1360, 1362 [2011] [internal quotation marks and citations omitted]; accord Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d 1165, 1168 [2018]). In reviewing assertions of spot zoning, a variety of factors may be considered, such as "whether the rezoning is consistent with a comprehensive land use plan, whether it is compatible with surrounding uses, the likelihood of harm to surrounding properties, the availability and suitability of other parcels, and the recommendations of professional planning staff" (Matter of Save Our Forest Action Coalition v City of Kingston, 246 AD2d 217, 221 [1998]; accord Matter of Rotterdam Ventures, Inc. v Town Bd. of Town of Rotterdam, 90 AD3d at 1362).
In support of its challenge to the zoning map amendment, petitioners provided, among other things, minutes from the City Council's meetings, FAQ pages for the previous development proposal from Saratoga Hospital related to parcel 1 and excerpts from the comprehensive plan. In response, respondents provided the entire future land use map, the entire comprehensive plan and the City's zoning ordinance, among other things. The comprehensive plan included a number of future land use categories which it expressly states are not zoning districts. Of the many categories listed in the plan, the ones relevant to parcel 1 are core residential neighborhood and institutional. A core residential neighborhood area is used primarily for residential purposes and is meant to "reflect [the City's] quintessential residential character and charm," whereas an institutional area is meant to include areas "that provide services such as religious, educational, health, cultural and tourism." Parcel 1 was designated as institutional and the land where petitioners resided was designated as a core residential neighborhood. The formal zoning map amendment shifted parcel 1 from a primarily residential district to one meant for professional offices.
Reading the language of the institutional category from the comprehensive plan together with the language of the OMB-2 district from the zoning ordinance, the two can be read as aligned because medical and professional offices inside an OMB-2 district could very well provide health services to the public. At the very least, as Supreme Court found, the question is "fairly debatable," thus [*6]it must be sustained (Matter of Save Our Forest Action Coalition v City of Kingston, 246 AD2d at 221 [internal quotation marks and citation omitted]). That proper alignment with the comprehensive plan demonstrates that the zoning map amendments also did not constitute illegal spot zoning (see Dodson v Town Bd. of the Town of Rotterdam, 182 AD3d at 114; Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d at 1169). Accordingly, Supreme Court properly concluded that petitioners did not meet their burden of demonstrating that the rezoning was "arbitrary, unreasonable or unlawful" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d at 1169 [citation omitted]).
Finally, we are unpersuaded by petitioners' contention that members of the City Council were biased during the zoning amendment process and subject to a conflict of interest because they received campaign contributions from representatives of Saratoga Hospital. "In determining whether a disqualifying conflict exists, the extent of the interest at issue must be considered and, where a substantial conflict is inevitable, the public official should not act" (Matter of Town of Mamakating v Village of Bloomingburg, 174 AD3d 1175, 1179 [2019] [internal quotation marks, brackets and citations omitted]; see Matter of Parker v Town of Gardiner Planning Bd., 184 AD2d 937, 938 [1992], lv denied 80 NY2d 761 [1992]). Although, under these circumstances, the receipt of campaign contributions may create an appearance of impropriety, we do not find that it gave rise "to an instance where a substantial conflict [is] inevitable" (Matter of Town of Mamakating v Village of Bloomingburg, 174 AD3d at 1179). Moreover, the campaign contributions do not amount to a violation of the City's Code of Ethics or the General Municipal Law, and petitioners do not argue otherwise. An actual violation of said statutes would speak more to a finding that a conflict is substantial and inevitable. Thus, Supreme Court properly found that there was no conflict of interest requiring annulment of the zoning map amendments.
Egan Jr., J.P., Lynch and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as (1) granted that part of respondents' motion for summary judgment dismissing the cause of action asserting violations of the State Environmental Quality Review Act as to parcel 1 and (2) denied petitioners' cross motion for summary judgment as to said cause of action; motion denied to said extent and cross motion granted to said extent; and, as so modified, affirmed.



Footnotes

Footnote 1: Ownership of parcel 1 is not entirely clear from the record.

Footnote 2: There was only one proposed amendment that was deemed to be not consistent with the comprehensive plan, but that parcel is not the subject of this appeal.

Footnote 3: As all of petitioners' arguments relative to SEQRA are specific to parcel 1, we are restricting our analysis to only that parcel.