61 Crown St., LLC v City of Kingston Common Council (2022 NY Slip Op 03955)

61 Crown St., LLC v City of Kingston Common Council

2022 NY Slip Op 03955

Decided on June 16, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 16, 2022

533032
[*1]61 Crown Street, LLC, et al., Appellants,
v
City of Kingston Common Council et al., Respondents, et al., Defendants.

Calendar Date:April 25, 2022

Before:Garry, P.J., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Rodenhausen Chale & Polidoro LLP, Rhinebeck (Janis M. Gomez Anderson of counsel) and Lewis & Greer, PC, Poughkeepsie (J. Scott Greer of counsel), for appellants.
Barbara Graves-Poller, Corporation Counsel, Kingston, for City of Kingston Common Council and another, respondents.
Riseley and Moriello, PLLC, Kingston (Michael A. Moriello of counsel), for JM Development Group, LLC and others, respondents.
Wayne Thompson, Poughkeepsie, for appellants, amici curiae.

Pritzker, J.
Appeal from an order of the Supreme Court (Mott, J.), entered February 19, 2021 in Ulster County, which granted certain defendants' motion for summary judgment dismissing the complaint against them.
This appeal involves plaintiffs' challenge to the Kingstonian Project, which seeks to redevelop certain parcels of land in the City of Kingston, Ulster County as a parking garage, apartments, a boutique hotel, retail space and a public pedestrian bridge and plaza. The Kingstonian Project is located in the Kingston Historic Stockade District (hereinafter KHSD), which is zoned as a C-2 commercial district within the "Mixed Use Overlay District" (hereinafter MUOD) permitting residential use under specific conditions. The properties set for redevelopment are an outdoor parking lot and defunct municipal parking garage located on a City-owned parcel at 21 North Front Street (hereinafter the City parcel) as well as a smaller parcel bordering the KHSD located at 51 Schwenk Drive that is owned by defendant Herzog Supply Co., Inc. (hereinafter the Herzog parcel).
The Kingstonian Project generally began in 2016 when defendant City of Kingston Common Council requested proposals to redevelop, among other things, the City parcel. In June 2019, defendant Kingstonian Development, LLC, Herzog's contract vendee, submitted a zoning petition to the Common Council seeking to amend the City zoning map so as to extend the MUOD to include the Herzog parcel. Following a negative declaration pursuant to the State Environmental Quality Review Act (see ECL article 8 [hereinafter SEQRA]), the Common Council approved the zoning amendment conditioned on a 10% affordable housing requirement placed upon the Herzog parcel.
In August 2020, plaintiffs, comprised of property owners within the KHSD and near the Kingstonian Project site, commenced the instant action for declaratory and injunctive relief pursuant to CPLR 3001 and General Municipal Law § 51, seeking "to prevent any illegal official act on the part of [municipal officers]." Plaintiffs' first cause of action alleged that the City parcel contains a picnic area and parkland (hereinafter the disputed area) that is subject to the public trust doctrine, and the second cause of action sought to enjoin the City from alienating the disputed area without an act of the Legislature. The third and fourth causes of action sought to declare a memorandum of understanding regarding the redevelopment of the City parcel, and its assignment, null and void. Finally, the fifth cause of action sought a declaration that the rezoning of the Herzog parcel was null and void because the Common Council engaged in illegal spot zoning when it amended the City zoning map to include the Herzog parcel within the MUOD. After issue was joined, Herzog, defendant JM Development Group, LLC, Kingstonian Development and defendant Patrick Page Holdings, L.P., as well as defendant Steven T. Noble, in his capacity as City Mayor, and the Common Council (hereinafter [*2]collectively referred to as defendants) moved for summary judgment dismissing the complaint against them. Plaintiffs opposed the motion. Supreme Court ultimately granted the motion for summary judgment and dismissed the complaint in its entirety, finding, as relevant here, that the public trust doctrine was inapplicable to the City parcel and that the Common Council's determination to extend the MOU to the Herzog parcel did not constitute illegal spot zoning.[FN1] Plaintiffs appeal.[FN2]
We turn first to plaintiffs' contention that Supreme Court erred in granting defendants' motion for summary judgment as to the first and second causes of action because triable issues of fact exist as to whether the disputed area has become a park by implication through longtime public use and thus the public trust doctrine is applicable. As relevant here, it is well settled that the public trust doctrine prohibits a municipality from alienating dedicated parkland for nonpark purposes absent the approval of the Legislature (see Matter of Avella v City of New York, 29 NY3d 425, 431 [2017]; Union Sq. Park Community Coalition, Inc. v New York City Dept. of Parks & Recreation, 22 NY3d 648, 654 [2014]). "[A] parcel may become a park either through express provision . . . or by implied acts" (Matter of Lazore v Board of Trustees of Vil. of Massena, 191 AD2d 764, 765 [1993]; see Matter of Angiolillo v Town of Greenburgh, 290 AD2d 1, 10-11 [2001], lv denied 98 NY2d 602 [2002]). "A party seeking to establish . . . an implied [parkland] dedication and thereby successfully challenge the alienation of the land must show that (1) the acts and declarations of the land owner indicating the intent to dedicate [its] land to the public use are unmistakable in their purpose and decisive in their character to have the effect of a dedication and (2) that the public has accepted the land as dedicated to a public use" (Matter of Glick v Harvey, 25 NY3d 1175, 1180 [2015] [internal quotation marks, brackets and citations omitted]; see Matter of Clover/Allen's Cr. Neighborhood Assn. LLC v M & F, LLC, 173 AD3d 1828, 1830 [2019]).
In support of their motion, defendants submitted, among other things, the affidavits of Christopher J. Zell, a licensed surveyor, with attached exhibits, and Ron Woods, the 50-year former chairman of the City's Recreation Commission. These submissions demonstrated that the disputed area has never been mapped or expressly dedicated as a public park (see Powell v City of New York, 85 AD3d 429, 431 [2011], lv denied 17 NY3d 715 [2011]), and that the City's Parks & Recreation Department did not manage the disputed area nor did it treat it as parkland (see generally Matter of Cannon Point Preserv. Corp. v City of New York, 183 AD3d 416, 417 [2020]). Defendants also established that public events held in the disputed area were merely temporary and sporadic uses of the City parcel, which do not sufficiently evince a clear intent by the City to treat the disputed area as [*3]a parkland (see Matter of Coney Is. Boardwalk Community Gardens v City of New York, 172 AD3d 1366, 1368-1369 [2019]). Given the foregoing, defendants established prima facie that the disputed area is not a park by implication (see generally Matter of Glick v Harvey, 25 NY3d at 1180). As such, the burden shifted to plaintiffs to raise a genuine issue of material fact warranting a trial (see Johnson v Freedman, 195 AD3d 1206, 1206-1207 [2021]).
In opposition, plaintiffs presented, as pertinent here, the environmental assessment form submitted by Kingstonian Development as part of the SEQRA process, Ulster County land records for the disputed area, exhibits revealing that — at least since 2013 — the Kingston Uptown Business Association has organized and sponsored the "Snowflake Festival" during December in the disputed area and the affidavit of William Vickery. Vickery is a project manager with William Gottlieb Management who, in August 2020, observed the disputed area. These submissions, although demonstrating that the disputed area has some park-like attributes, falls well short of unequivocally establishing an implied dedication. Notably, Supreme Court found this area to be a mere "sidewalk setback, irrefutably part of a [g]arage lot inherited from a defunct City development agency as surplused land." Although the SEQRA environmental assessment form refers to a part of the City parcel as a "small pocket park,"[FN3] this form was created by Kingstonian Development and therefore, contrary to plaintiffs' contention, does not constitute an unmistakable expression of the City's intent to treat the area as such. Neither does the use of the area by a private business for once-a-year holiday events, regardless of whether municipal resources were applied, as these events were temporary and sporadic in nature (see Matter of Coney Is. Boardwalk Community Gardens v City of New York, 172 AD3d at 1368-1369). Further, the fact that there is a concrete patio, a few movable picnic tables, a planter and some painted hop-scotch boards does not nearly establish the municipality's unmistakable intent to permanently dedicate public land for use as a park (see Matter of Glick v Harvey, 25 NY3d at 1180-1181; compare Village of Croton-On-Hudson v County of Westchester, 38 AD2d 979, 980 [1972], affd 30 NY2d 959 [1972]). Moreover, the public's use of the area to sit and eat lunch could occur in many parts of the City as it is an activity that can happen in virtually any public space. Finally, even if such use could be relevant to the question of the public's acceptance of the disputed area as a park, such activities have little or no bearing on whether the City permanently dedicated such land for use as a park (see e.g. Matter of Glick v Harvey, 25 NY3d at 1180-1181). Accordingly, Supreme Court did not err in finding that plaintiffs failed to raise a question of fact and, thus, properly granted summary judgment to defendants as to the first and second causes of action[*4].[FN4]
We next address plaintiffs' contention that Supreme Court erroneously granted summary judgment dismissing their fifth cause of action asserting illegal spot zoning. "Spot zoning is the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area for the benefit of the owner of said property to the detriment of other owners" (Matter of Evans v City of Saratoga Springs, 202 AD3d 1318, 1323 [2022] [internal quotation marks and citations omitted]). "In evaluating a claim of spot zoning, courts may consider several factors, including whether the rezoning is consistent with a comprehensive land use plan, whether it is compatible with surrounding uses, the likelihood of harm to surrounding properties, the availability and suitability of other parcels, and the recommendations of professional planning staff" (Matter of Rotterdam Ventures, Inc. v Town Bd. of the Town of Rotterdam, 90 AD3d 1360, 1362 [2011] [internal quotation marks and citations omitted]; see Matter of Evans v City of Saratoga Springs, 202 AD3d at 1323). However, "the ultimate inquiry is whether the challenged zoning is other than part of a well-considered and comprehensive plan calculated to serve the general welfare of the community" (Matter of Baumgarten v Town Bd. of Town of Northampton, 35 AD3d 1081, 1084 [2006] [internal quotation marks and citations omitted]; see Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d 1165, 1168 [2018]). Where the zoning amendment is indeed part of a comprehensive plan, it "will be upheld if it is established that it was adopted for a legitimate governmental purpose and there is a reasonable relation between the end sought to be achieved by the amendment and the means used to achieve that end" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d at 1168 [internal quotation marks, ellipses, brackets and citations omitted]; see Asian Ams. for Equality v Koch, 72 NY2d 121, 132 [1988]).
Here, defendants met their initial burden of demonstrating that the zoning change did not constitute spot zoning. Defendants' submissions show that the Herzog parcel is directly adjacent to the MUOD and that extending the MUOD to include the Herzog parcel is consistent with the City's comprehensive plan. Indeed, the City's comprehensive plan includes an objective to "[r]egulate a land use pattern that concentrates residential density and commercial activity in mixed-use cores" by, as relevant here, "[a]llow[ing] mixed-uses in the C-2 [d]istricts." Significantly, the rezoning amendment's compliance with the comprehensive plan and local zoning laws was confirmed by the SEQRA negative declaration, which noted that the Planning Board thoroughly examined any adverse effects resulting from the zoning change and supported the Common Council's resolution adopting the amendment. As such, defendants established that the zoning amendment "was consistent with the [City's] comprehensive [*5]plan and was calculated to benefit the community as a whole as opposed to benefitting individuals or a group of individuals" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d at 1168-1169 [internal quotation marks and citation omitted]; see Matter of Evans v City of Saratoga Springs, 202 AD3d at 1324; Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake, 185 AD3d 1306, 1310 [2020], appeal dismissed 36 NY3d 943 [2020], lvs denied 36 NY3d 913 [2021]; Matter of Bergami v Town Bd. of the Town of Rotterdam, 97 AD3d 1018, 1020 [2012]).
The burden thus shifted to plaintiffs to raise a triable issue of fact (see Johnson v Freedman, 195 AD3d at 1206-1207), which they failed to do. In their opposition to the motion, plaintiffs pointed to, among other things, statements from a Common Council alderperson opposing the rezoning; however, we find these comments to be irrelevant to this challenge (see Udell v Haas, 21 NY2d 463, 471 [1968]; see generally Greenport Group, LLC v Town Bd. of the Town of Southold, 167 AD3d 575, 580 [2018], lv denied 33 NY3d 910 [2019]). Plaintiffs also contend that the rezoning constituted spot zoning because it was conditioned upon what they believe is a suspect requirement that development in the Herzog parcel include affordable housing. Although the record evinces some confusion as to whether that requirement applies to the Kingstonian Project altogether or just the Herzog parcel, either is consistent with the City's comprehensive plan, which expressly identifies a goal of "[r]equir[ing] affordable housing for any new or expanded residential building or development project." Indeed, the Code of the City of Kingston provides that, according to the City's comprehensive plan, one of the purposes of creating the MUOD was to encourage the development of affordable housing units (see Code of the City of Kingston § 405-27.1 [A] [2] [c]). Thus, the zoning amendment is consistent with the comprehensive plan's affordable housing goals and does not constitute spot zoning (see Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d at 1169; Matter of Youngewirth v Town of Ramapo Town Bd., 155 AD3d 755, 761 [2017]; Matter of Hart v Town Bd. of Town of Huntington, 114 AD3d 680, 683-684 [2014], lv denied 24 NY3d 908 [2014]). Therefore, inasmuch as plaintiffs failed to raise a triable issue of fact, Supreme Court properly granted defendants' motion for summary judgment as to the fifth cause of action. We have examined plaintiffs' remaining contentions and, to the extent not expressly addressed herein, have found them to be lacking in merit.
Garry, P.J., Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: On appeal, plaintiffs do not challenge the portion of the decision that dismissed the third and fourth causes of action.

Footnote 2: Plaintiffs moved for a preliminary injunction, which motion this Court denied (2021 NY Slip Op 73672[U]).

Footnote 3: In their brief, plaintiffs include several exhibits regarding pocket parks that are dehors the record and, thus, inappropriate for this Court's consideration on appeal (see Citibank, N.A. v Kerszko, 203 AD3d 42, 53 [2022]).

Footnote 4: Plaintiffs further argue that Supreme Court prematurely decided the summary judgment motion without allowing full discovery because, among other things, depositions would have revealed "[a]dditional facts relative to the City's internal treatment" of the disputed area "with respect to items such as maintenance, planning, and budgeting." Inasmuch as plaintiffs failed to "provide some evidentiary basis for [their] claim that further discovery would yield material evidence and also demonstrate how further discovery might reveal material facts in the movant's exclusive knowledge" (Rochester Linoleum & Carpet Ctr., Inc. v Cassin, 61 AD3d 1201, 1202 [2009] [internal quotation marks and citation omitted]; accord Arthur Brundage Inc. v Morris, 189 AD3d 2032, 2032 [2020]), Supreme Court did not err in denying plaintiffs' request to deny defendants' motion for summary judgment pending further discovery (see CPLR 3212 [f]).