Matter of Bennett v Troy City Council (2024 NY Slip Op 05257)

Matter of Bennett v Troy City Council

2024 NY Slip Op 05257

Decided on October 24, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 24, 2024

CV-23-0709
[*1]In the Matter of Jessica Bennett, Appellant,
v
Troy City Council, Respondent.

Calendar Date:September 10, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, McShan and Powers, JJ.

Pace Environmental Litigation Clinic, White Plains (Todd D. Ommen of counsel), for appellant.
Pattison, Sampson, Ginsberg & Griffin, PLLC, Troy (Rhiannon I. Gifford of counsel), for respondent.

Lynch, J.
Appeal from a judgment of the Supreme Court (Laura M. Jordan, J.), entered March 23, 2023 in Rensselaer County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review, among other things, a determination of respondent adopting a negative declaration of environmental significance.
In May 2020, a developer proposed the construction of an apartment complex on a vacant, forested, 11-acre parcel situated at the northern end of the City of Troy, Rensselaer County, adjacent the Hudson River. Since the parcel fell within a zoning area designated for single family homes, the project necessitated a zone change. That summer, respondent's Planning Committee passed a resolution referring the proposed zoning change to the City Planning Commission "for review and recommendation." The Planning Commission received numerous comments and letters from the community in opposition to the project, including from a group identified as "The Friends of the Mahicantuck," as well as the Schaghticoke First Nations, and the Stockbridge-Munsee Community. By April 2021, the Planning Commission voted against making a favorable recommendation for the proposal. Thereafter, following a coordinated review, respondent was established as lead agency for purposes of review under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), under which the project was deemed a type I action (see 6 NYCRR 617.4). In July 2021, after reviewing Part 1 of the Environmental Assessment Form (hereinafter EAF) submitted by the developer, respondent determined that additional information was required. To that end, the developer submitted an "Expanded Environmental Assessment Report" dated October 2021, prepared by Environmental Design Partnership, LLP (hereinafter EDP), which included studies addressing various project impacts. On May 6, 2022, following a review of the EDP report, respondent issued "a negative declaration finding that the project as proposed will not result in any significant adverse environmental impacts and that a Draft Environmental Impact Statement [(hereinafter EIS)] will not be necessary." Shortly thereafter, on June 2, 2022, respondent adopted an ordinance rezoning the subject parcel from an "R-1" single-family residential district to a "P" Planned Development District, subject to site-specific conditions that included developing the property "in substantial conformance" with the October 2021 EDP report and the recommendations in a 2020 Phase IB/II archaeological study prepared by Hartgen Archaeological Associates, Inc. annexed to that report.
In July 2022, petitioner, who lives adjacent to the project site and is a cofounder of The Friends of the Mahicantuck, commenced this CPLR article 78 proceeding challenging respondent's decision to issue a negative declaration and rezone the parcel.[FN1] Following joinder of issue, Supreme Court dismissed the petition. Petitioner appeals.
We begin by recognizing that "[j]udicial [*2]review of an agency determination under SEQRA is limited to whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 231-232 [2007] [internal quotation marks and citations omitted]). An agency decision should only be annulled "if it is arbitrary, capricious or unsupported by the evidence" (id. at 232; accord Matter of Boise v City of Plattsburgh, 219 AD3d 1050, 1055 [3d Dept 2023]).
Petitioner takes issue with respondent's decision to issue a negative declaration, concluding the SEQRA review process. There is no dispute that the project qualifies as a type I action for SEQRA purposes, which "carries with it the presumption that it is likely to have a significant adverse impact on the environment and may require an EIS" (6 NYCRR 617.4 [a] [1]). Pertinent here, "[t]o require an EIS for a proposed action, the lead agency must determine that the action may include the potential for at least one significant adverse environmental impact" (6 NYCRR 617.7 [a] [1]). On the flip side, an EIS will not be required when a determination is made that "there will be no adverse environmental impacts or that the identified adverse environmental impacts will not be significant" (6 NYCRR 617.7 [a] [2]). The regulations provide "[c]riteria for determining significance," which "are considered indicators of significant adverse impacts on the environment" (6 NYCRR 617.7 [c] [1]). The criteria include "the impairment of the character or quality of important historical, archeological, architectural, or aesthetic resources or of existing community or neighborhood character" (6 NYCRR 617.7 [c] [1] [v]).
In completing Parts 2 and 3 of the EAF, respondent identified a number of categories that might have a "moderate to large impact" on the environment, including "Impact on Historic or Archaeological Resources." Our focus turns to the historic/archaeological category. As discussed in the Hartgen Phase IB/II Archaeological Site Evaluation dated April 2020, the project site has been deemed eligible under the National Register of Historic Places. That assessment was first made based on archaeological surveys performed in 2008 and 2010 in conjunction with a project extending a waterline from the City of Troy under the Hudson River to the Town of Waterford. As discussed in the Hartgen evaluation, the site contains "a Middle to Late Archaic quarry with multiple loci, representing a full range of extraction and production activities." Hartgen's 2020 survey addressed previously undocumented areas on the parcel, following which Hartgen recommended "the whole of the expanded site" as eligible for the National Register. Hartgen's evaluation concludes with the following recommendation: "Avoidance of the defined site area or additional Phase III Data Recovery is recommended."
In the October 2021 EDP enhanced [*3]report, the consultant observed that "[a]ny portions of the . . . Precontact Site that would be impacted by the Project would be subjected to mitigation measures, typically in the form of a Phase III archaeological data retrieval study." Significantly, the report explains that "the applicant would develop a Phase III data retrieval plan ([hereinafter DRP])" in consultation with the State Office of Parks, Recreation and Historic Preservation (hereinafter OPRHP) and the Stockbridge-Munsee Community. EDP explained that once a final plan was agreed upon, the consulting parties "would formalize an agreement upon the measures to be taken to resolve the [p]roject's impacts upon National Register eligible cultural resources." By comparison, in a Determination of Significance underlying the negative declaration, respondent recognized that "[t]he project may have a moderate impact on archaeological resources," while explaining that it would endeavor to comply with the Hartgen evaluation to "either avoid the expressly defined areas of the site or conduct a Phase III recovery study" in coordination with OPRHP.
In our view, respondent's characterization of the archaeological impact as "moderate" unduly minimizes the historic/archaeological significance of the project site. We also find it significant that respondent's coordination plan with OPRHP excludes the Stockbridge-Munsee Community as a consulting party, notwithstanding EDP's report including the Stockbridge-Munsee Community as a key participant. By letter dated May 3, 2022, just three days before respondent adopted the negative declaration, a representative from the Stockbridge-Munsee Community Tribal Historic Preservation Office wrote to respondent "to state the Tribe's strong[ ] disagreement" with the proposed negative declaration resolution. Having reviewed the Hartgen evaluation, the representative explained that "our office concluded there would be serious and irrevocable impacts to [i]ndigenous cultural resources including a significant site known to be eligible for the National Register of Historic Places and has yielded or may be likely to yield, information important in history or prehistory." He further commented that "[f]or thousands of years the site was used for the extraction of resources for lithic tool making and camping along the [r]iver." In 2021, a Stockbridge-Munsee Community Tribal Historic Preservation Officer submitted a statement to respondent explaining that the parcel "has high archaeological sensitivity and cultural significance for the Stockbridge-Munsee Band of Mohican Nation. . . . The recorded Chert Quarries Precontact Site represents immense cultural and educational significance. For thousands of years this area was used for the extraction of resources for Mohican people."
As the Department of Environmental Conservation recognized in a June 15, 2021 letter advising respondent that it had no objection to respondent assuming lead agency status, "[t]he project site appears [*4]to be located within an area of potential historical or archaeological significance" requiring consultation with OPRHP for any necessary permits. It is evident from the record that the proposed project — which at the time the negative declaration was issued called for the construction of three four-story multifamily apartment buildings, with attendant driveways and parking areas — will impact protected areas on the project site, necessitating — at a minimum — a Phase III data retrieval plan. Considering as much, it is important to recognize that "[a] principal goal of SEQRA is to incorporate environmental considerations into the decisionmaking process at the earliest opportunity" (Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie, 3 NY3d 508, 518 [2004] [internal quotation marks and citation omitted]; see 6 NYCRR 617.1 [c]). In view of the site's significant archaeological history, and the omission of the Stockbridge-Munsee Community as a consulting party in formulating any required data retrieval plan, we find that respondent failed to take the necessary hard look at the significant environmental impact expected from the project by issuing a negative declaration (see Matter of Evans v City of Saratoga Springs, 202 AD3d 1318, 1322 [3d Dept 2022]). The benefit of an EIS "is a more comprehensive evaluation of environmental impact" (Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie, 3 NY3d at 519-520) that allows for continued public scrutiny (see Matter of Bronx Comm. for Toxic Free Schs. v New York City Sch. Constr. Auth., 20 NY3d 148, 155-156 [2012]; compare Matter of Boise v City of Plattsburgh, 219 AD3d at 1058-1059). Without limiting the participation of other interested parties, that public scrutiny warrants the inclusion of the Stockbridge-Munsee Community in the EIS process as EDP proposed in the October 2021 report. As such, Supreme Court erred in dismissing petitioner's second cause of action challenging respondent's determination to issue a negative declaration under SEQRA. The petition should be partially granted to the extent of annulling respondent's SEQRA determination and vacating the ensuing rezoning ordinance that relied on that determination.
Petitioner also challenges respondent's zoning amendment as prohibited spot zoning in conflict with the City's comprehensive plan. Spot zoning is "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area for the benefit of the owner of said property to the detriment of other owners" (Matter of Rotterdam Ventures, Inc. v Town Bd. of the Town of Rotterdam, 90 AD3d 1360, 1362 [3d Dept 2011] [internal quotation marks and citations omitted]). A municipality's zoning determination is entitled to a strong presumption of validity, but at the same time must comport with its comprehensive plan (see Matter of Evans v City of Saratoga Springs, 202 AD3d at 1322-1323). Here, respondent [*5]determined that the project was consistent with the 2018 Realize Troy Comprehensive Plan, by utilizing a "low-impact design, increasing available residential units (specifically multi-unit buildings), expanding access to the waterfront, providing new open space areas, and connecting Lansingburgh to the Hudson River shoreline." While the project certainly differs from the existing single-family zoning, it does maintain a residential use and would establish a multi-use trail along the shoreline opening public access to the Hudson River. The initial rejection of the proposal by the Planning Commission is relevant to this compatibility question (see Matter of Save Our Forest Action Coalition v City of Kingston, 246 AD2d 217, 221 [3d Dept 1998]), but the record was expanded by the EDP October 2021 report prior to respondent's determination. Under these circumstances, where the question of compatibility is "fairly debatable," we conclude that petitioner did not meet her burden of demonstrating that the zoning amendment constituted illegal spot zoning (Matter of Evans v City of Saratoga Springs, 202 AD3d at 1324 [internal quotation marks and citations omitted]; see Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d 1165, 1169 [3d Dept 2018]).
Egan Jr., J.P., Pritzker, McShan and Powers, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the second cause of action asserting violations of the State Environmental Quality Review Act; petition granted to the extent of annulling respondent's SEQRA determination and vacating the rezoning ordinance; matter
remitted to respondent for a full environmental review consistent with this decision; and, as so modified, affirmed.

Footnotes

Footnote 1: In her petition, petitioner identifies "The Friends of the Mahicantuck" as "a broad community coalition dedicated to the protection and preservation of [the City of] Troy's last untouched waterfront forest and indigenous cultural site with national significance."